# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>GERALD WAYNE LEBEAU,<br>a/k/a GERS LEBEAU<br>NEIL THOMAS LEBEAU,<br><br>                    Defendants. | 5:14-CR-50048-KES<br><br><br>REPORT AND RECOMMENDATION |

Pending before this Court are the following Motions:

1. Gerald LeBeau's Motion to Suppress (ECF No. 30)

2. Gerald LeBeau's Motion to Suppress Tape Recordings of Jail Telephone Calls (ECF No. 129)

3. Neil LeBeau's Motion to Suppress Recorded Telephone Conversations (ECF No. 154)

4. Gerald LeBeau's Motion to Suppress Sealed Envelopes and Motion for a Frank's hearing (ECF No. 140)

5. Neil LeBeau's Motion to Join Gerald LeBeau's Motion re: Sealed Envelopes/Frank's hearing (ECF No. 163)

6. Gerald LeBeau's Second Motion to Suppress Statements and Evidence and Request for a Frank's hearing (ECF No. 142)

7. Gerald LeBeau's Motion to Suppress Evidence Taken from Tribal Land (ECF No. 157)

8. Neil LeBeau's Motion to Join Gerald LeBeau's Motion to Suppress Evidence Taken from Tribal Land (ECF No. 160)

9. Neil LeBeau's Motion to Suppress Evidence re: 2012 traffic stop (ECF No.161)

An evidentiary hearing was held on March 11-13, 2015. Defendant Gerald LeBeau (hereinafter "Gers") was personally present and represented by his attorney of record, George Grassby. Defendant Neil LeBeau (hereinafter "Neil") was personally present and represented by his attorney of record, John M. Fitzgerald. The Government was represented by Ted McBride. Fifteen (15) witnesses testified at the hearing. Forty-two (42) exhibits were received into evidence. Both parties have submitted briefs prior to the hearing and subsequent to the hearing. Based on a careful consideration of all the evidence, and counsel's arguments, the Court respectfully makes the following findings of fact and conclusions of law:

## JURISDICTION

Defendant Gerald LeBeau is charged in a Superseding Indictment with Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), Conspiracy to Distribute a Controlled Substance (Cocaine) in violation 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B), Conspiracy to Distribute a Controlled Substance (Marihuana) in violation 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(D), and Witness Tampering in violation of 18 U.S.C. § 1512(B)(1).

Defendant Neil LeBeau is charged in a Superseding Indictment with Conspiracy to Distribute a Controlled Substance (Cocaine) in violation 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B), and Conspiracy to Distribute a

2

Controlled Substance (Marihuana) in violation 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D).

The pending Motions were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Honorable Jeffrey L. Viken's Standing Order dated March 9, 2015.

## FACTUAL BACKGROUND

Gerald LeBeau, a/k/a Gers LeBeau has been the subject of a couple of investigations over the past 23 years during Special FBI Agent Dan Cooper's tenure in Rapid City. In 2002, Gers was convicted in the District of South Dakota of Possession with Intent to Distribute and received a 120 month prison sentence. During the course of the 2002 investigation, Gers threatened to kill a law enforcement officer and his family. Gers also took efforts to escape law enforcement, such as diving out of a window and leading officers on a high speed chase. From 2011 to 2013, law enforcement had reports from independent sources that Gers possessed guns, waived guns, threatened to shoot people, and threatened to have a shoot-out with police because he did not want to go back to prison. (Hr'g Tr. 234). From 2011 through the date of their arrest, Gers LeBeau and Neil LeBeau were the subject of an open and active FBI investigation involving illegal narcotics.

On January 10, 2014, a Special Agent from Montana, Jeff Young Blood, was effectuating a search warrant of a hotel room at Cadillac Jack's Casino in Deadwood, South Dakota. This search was conducted in an unrelated case involving Lloyd Nickel. While executing the search warrant for Lloyd Nickel's

3

hotel room, hotel staff informed Agent Young Blood that a female[1] who had accompanied Lloyd Nickel was still in the hotel and she was presently in the company of Gerald LeBeau. (Hr'g Tr. 134, 229-231, 250-251, 476-477, 426).

Unfamiliar with the history of Gerald LeBeau, Agent Young Blood contacted local Agent Dan Cooper to see if he was familiar with Gerald LeBeau. Agent Cooper informed Agent Young Blood of Gers' criminal history involving narcotics. Lloyd Nickel's hotel room and Ger's hotel room were on the same floor of the hotel. Given the concern that Agent Young Blood was in the middle of executing the search warrant, and that the female occupant of the hotel room was believed to be at large in the hotel and in the company of a suspected drug dealer (Gers), who was also at large in the hotel. Agent Cooper, along with Agent Lyle Tolsma and Agent Shawn Sheridan, went to Cadillac Jack's to assist Agent Young Blood.

When the additional Agents arrived at Cadillac Jack's, hotel staff informed law enforcement that the female who had affiliated with Lloyd Nickel, was now in the company of Gers LeBeau. (Hr'g Tr. 185). Officer Tolsma and Officer Sheridan reviewed hotel surveillance footage showing the female, whom staff had identified as the female with Lloyd Nickel, enter Gers' hotel room. Wanting to speak with the female, law enforcement concocted a plan to have

---

[1] Defendants presented lengthy testimony and argument regarding the identity of the female. Hotel staff first believed the female who was initially with Lloyd Nickel, was named Jessica Fields. Hotel staff relayed to law enforcement that this female was now in the company of Gerald LeBeau. Gerald LeBeau called the female "Katrina." Ultimately, the female was identified as Tyra Smith. It should be noted that this female has previously been convicted of unauthorized ingestion of methamphetamine, which is a felony. She also was one forgery conviction; previously used the name of Kristi Banda and has been arrested several times for concealing identity/forgery/theft of identity.

4

the hotel manager, Tim Atyeo, stand outside of Gers' hotel room while hotel staff telephoned Gers' room and ask Gers to the step outside to talk to the general manager.  Gers opened his hotel room door and law enforcement asked him to step out of the room so they could speak to him.  Gers stepped out of the hotel room into the hall where he was patted down and handcuffed.  (Hr'g Tr. 254).  Law enforcement inquired of Gers as to the identity of the female in the room.  Officers testified that they informed Gers that they needed to speak with the female in the room.  Gers stated that her name was Katrina, he did not know her last name, and that she was from Albuquerque.  Gers called to the female, "Katrina" and according to the testimony of law enforcement, Gers indicated to the officers to go ahead. (Hr'g Tr. 321, 346).  While in the hallway, Gers and Marlin LeBeau[2] remained cuffed and detained and were not free to leave. (Hr'g Tr. 296).  From review of the audio tape, law enforcement was not threatening or aggressive.  Gers was cooperative and did not vocalize any protest when law enforcement indicated that they were going ahead with entering the hotel room.  The quality of the audio tape makes it very difficult to decipher every conversation that took place.

The hotel room door was still ajar (Hr'g Tr. 283, 321) and Agent Tolsma knocked on the door and the female responded with, "Hello?" (Ex. 10 at 3:07).  Agent Tolsma pushed open the door, entered the room and spoke to the female.  While Agent Tolsma made contact with the female, Agent Sheridan conducted a

---

[2] Marlin LeBeau was walking down the hallway when law enforcement first approached Gers' hotel room.  He was detained in the hallway while law enforcement met with Gers in the hallway.

protective sweep of the hotel room. Agent Tolsma testified that he felt that he had consent to enter the room to speak with the female, but that he did not have consent to search the room. (Hr'g Tr. 256). Gers' former attorney also stated that the agents had permission to enter the room to speak with or to remove the female, but did not have consent to search the room. (Mot. Suppress 1, ECF No. 31). While conducting the protective sweep, Agent Sheridan observed a white powdery substance located on a counter by the sink in plain view. (Hr'g Tr. 257)

The female was removed from Gers' hotel room and taken to another room for an interview. Gers and Marlin LeBeau were brought back into the room. Law enforcement repositioned their handcuffs from behind the back to place them in the front. Agent Tolsma told Gers that they were there to identify the female and that they wanted to interview him. Agent Tolsma informed Gers that he was not under arrest and that he did not have to talk to law enforcement if he did not want to. (Hr'g Tr. 259). Gers informed the officers of how he met the female and why she was in his hotel room. Agent Tolsma asked Gers for consent to search the hotel room and prepared a permission to search form. (Ex. 11). Initially, the form identified Room 452, the Dillinger Suite, as the place to be searched. Gers signed the permission to search form. Agent Tolsma and Agent Sheridan both testified that they witnessed Gers signing the permission form. (Hr'g Tr. 263, 350).

The audio tape stopped working during the time frame that Gers signed Exhibit 11. Upon discovering that the tape had malfunctioned, Agent Tolsma

6

secured the battery and approached Gers again regarding the consent form. The audio tape verifies that Gers confirmed that he previously signed the permission to search form. (Ex. 10, Ch. 2 at :014). Gers followed up by stating, "I've got nothing to hide." Id.

Gers LeBeau had the odor of alcohol on him. However, he did not show any signs of intoxication from drugs or alcohol. (Hr'g Tr. 140, 141, 271, 430-431). When he was booked into the jail, he was administered a preliminary breath test ("PBT") which registered a .036 (Hr'g Tr. 102).

While searching his hotel room, Agent Tolsma asked Gers of they could also search his 1992 Thunderbird. Gers verbally agreed to allow law enforcement to search the Thunderbird. (Ex. 10, Ch. 2 at 39:40). Using a different pen, Agent Tolsma added the search of the Thunderbird to the permission form. Agent Tolsma and Agent Sheridan initialed the form. Gers did not initial the form.

Agent Cooper searched Gers' Thunderbird. After discovering the large quantity of cocaine in Gers' car, Agent Cooper placed Gers under arrest. He was escorted to the parking lot and placed in the patrol car. Agent Sheridan read Gers his *Miranda* rights. (Hr'g Tr. 140). Gers indicated that he understood his rights and wanted a lawyer before he said anything. Agent Cooper testified that after Gers asked for a lawyer, they did not ask him anything further. (Hr'g Tr. 141). During the 40-45 minutes transport to the Pennington County Jail, Gers engaged the agents in conversation. (Hr'g Tr. 141). Gers talked about

7

why he was at the casino, his gambling habits, and gambling strategies. (Hr'g Tr. 141).

When Agent Sheridan and Agent Cooper arrived at the Pennington County Jail, Gers was booked into the jail. The booking form is Exhibit 15, and contains Gers' signature. Agent Tolsma was not present at the time Gers was booked into the jail or when Gers signed the form, as Agent Tolsma was still in Deadwood, processing the female on drug charges. (Hr'g Tr. 144).

On January 16, 2014, Agent Cooper prepared an affidavit for an application for a search warrant for Gers' FEMA trailer located on the Pine Ridge Indian Reservation, Gers' cell phone and the 1992 Ford Thunderbird. Agent Cooper was unable to present the affidavit and application to United States Magistrate Judge Duffy, because she was out of town (Hr'g Tr. 146). They were then presented to District Court Judge Jeffrey L. Viken. Judge Viken began reviewing the affidavit and then recused himself from the case (Hr'g Tr. 147). Agent Cooper then presented the search warrants to South Dakota State Seventh Circuit Court Judge Robert Gusinsky. Judge Gusinsky issued the search warrants.

On January 17, 2014, Agent Cooper and Agent Tolsma approached the Margaret Clark residence, which is located on the Pine Ridge Indian Reservation. Margaret Clark informed law enforcement that the house was hers; she had control over all of the rooms; that she lets friends and family stay there occasionally and temporarily. (Hr'g Tr. 125, 483). Ms. Clark gave officers consent to search her house and she signed the consent form, which is marked

8

as Exhibit 5. (Hr'g Tr. 481, 483). Ms. Clark told law enforcement officers that different relatives stay at her house and that she had no idea what items belong to whom. (Hr'g Tr. 482). Only Ms. Clark and her sister, Twila, have keys to the Margaret Clark residence (Hr'g Tr. 484).

While Gers was in custody of the Pennington County Jail, he placed several phone calls from the jail. At the beginning of all calls, an announcement is played warning both the inmate and the recipient of the call that the call is being recorded. The announcement is played in its entirety up until the recipient of the phone call either accepts or declines the phone call. (Hr'g Tr. 128-129). The recipient can skip the announcement, by electing to accept the call prior to the announcement being completed. Gers is familiar with this procedure as he has informed recipients that they don't need to listen to the whole announcement and they can simply accept the phone call. (Hr'g Tr. 129).

In mid-February of 2014, while Gers was in custody at the Pennington County Jail, he wrote several letters. Two of the letters, which were sealed, were seized by US Marshals on July 16, 2014. One of the letters was addressed to Neil LeBeau and the other was addressed to Pablo LeBeau, Gers' son who was incarcerated on charges of conspiracy to distribute a controlled substance. Special Agent Matthew Miller presented a search warrant to United States Magistrate John E. Simko, who issued a warrant authorizing the letters to be opened. Additionally, inmate Scott Burleson was a cellmate of Gers LeBeau. Gers told Mr. Burleson of his drug trafficking activities (Hr'g Tr. 150).

9

Mr. Burleson wrote letters to his attorney detailing the information provided by Gers. Additionally, Gers wrote a letter to Pablo LeBeau, gave it to Scott Burleson to mail to Pablo under the pretense that it was prepared and mailed by Scott Burleson in order to circumvent the jail mailing system. (Hr'g Tr. 150-151). Mr. Burleson gave these letters to his attorney. Mr. Burleson and his attorney then arranged for a meeting with Agent Cooper and provided them with these letters. When the letters were provided to law enforcement by Mr. Burleson and his attorney, they had already been opened. Agent Cooper testified that Mr. Burleson was never directed to steal anything from Gers LeBeau. (Hr'g Tr. 160). He also testified that Mr. Burleson did not steal the letters from Gers, but that Gers gave the letters to Mr. Burleson. (Hr'g Tr. 200).

Similarly, Gers wrote a letter to Pablo LeBeau. Pablo LeBeau, through his attorney, contacted law enforcement and turned over the letter. Gers applied for a Writ of Habeas Corpus Ad Testificandum for Pablo LeBeau to appear. The Court granted the Writ. Immediately thereafter, Pablo's attorney moved to quash the Writ, invoking his Fifth Amendment right against self-incrimination. Given Pablo's right to claim the privilege of the Fifth Amendment, the Court granted the motion to quash the Writ.

While in custody of the jail, Gers Lebeau also prepared a note and passed it to a fellow inmate, Luke Pond. (Hr'g Tr. 161). Passing notes is in violation of jail policy. Mr. Pond was caught with the note and he turned it over to the jail. The note was then seized by the jail and turned over to Agent Cooper.

10

## DISCUSSION

### Issue I. Motion to Suppress Evidence (ECF No. 30, ECF No. 142)

#### A.    Introduction

Gers LeBeau first argues that law enforcement lacked probable cause to conduct a search of his hotel room and question him.   Here, officers engaged in a "knock and talk." "As commonly understood, a 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." States v. Cruz-Mendez, 467 F.3d 1260, 1264 (10th Cir. 2006).  This principle permits police officers—consistent with the Fourth Amendment—to "approach[ ] the front door to announce their presence," make "inquir[ies]," and "request consent to search the remainder of the property." United States v. Wells, 648 F.3d 671, 679 (8th Cir. 2011) (citing United States v. Weston, 443 F.3d 661, 667 (8th Cir.2006).  However, a "knock and talk" can become coercive if the police assert their authority, refuse to leave, or otherwise make the people inside feel they cannot refuse to open up.  United States v. Poe, 462 F.3d 997, 1000 (8th Cir. 2006).  Here, there is no evidence of coercive law enforcement actions threatening Gers to open the door.  Gers was contacted on the telephone by hotel staff requesting Gers to open his door to talk to the hotel manager.  This trickery is not prohibited by the Fourth Amendment.  In the case of United States v. Spotted Elk, the defendant opened her motel room after the hotel manager knocked and stated, "Front desk" while officers waited at the door.  548 F.3d 641, 654 (8th Cir. 2008).  The Eighth Circuit upheld the district court's finding

11

that the defendant opened the door of the motel room of her own accord and therefore, no Fourth Amendment violation occurred. Likewise, the knock and talk procedure conducted here complied with the requirements of the Fourth Amendment.

### B.  Ger's Pre-Arrest Statements

Ger's moves to suppress all statements he made during his immediate detention outside of his hotel room and all other pre-arrest statements made while he was in the hotel room.

The government filed a response indicating that it does not intend to use any of the statement made by Gers LeBeau during the search of the hotel room during its case in chief. Because the government does not intend to offer the contested evidence at trial, the court need not reach the merits of this motion to suppress. The proper course of action is to deny the motion to suppress, subject to renewal if it becomes necessary. See, eg., United States v. Lindsey, No. 10-15 (JNE/JJK), 2010 WL 4822925 at *1 (D.Minn. Nov. 22, 2010); United States v. Mitchell, No. 08-CR-46-LRR, 2009 WL 36605 (N.D. Iowa Jan. 5, 2009). It is respectfully recommended that the motion to suppress the pre-arrest statements be denied as moot.

### C. Search of the hotel room

Gers LeBeau moves to suppress the physical evidence obtained in the hotel room. He argues that he did not give consent to search the room. He asserts that the permission to search form was forged. Second, Gers argues that he was impaired and unable to give consent.

12

### 1.    Consent

When a defendant claims he did not voluntarily consent to a search, the Government bears the burden of proving consent was voluntarily given. United States v. Sanders, 341 F.3d 809, 817 (8th Cir. 2003). The standard of proof is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477 (1972).

It should be noted that even if Gers LeBeau made statements in the absence of *Miranda* warnings, it does not necessarily follow that Mr. LeBeau's consent to search the hotel room is invalid, or must be suppressed in the absence of *Miranda* warnings. "[A] consent to search is not an incriminating statement." Cody v. Solem, 755 F.2d 1323, 1330 (8th Cir. 1985), cert. den. 474 U.S. 833 (1985). And "even persons who have been arrested and are in custody can voluntarily consent to a search . . ." United States v. Chaidez, 906 F.2d 377, 382 (8th Cir. 1990).

There are several factors to be examined to determine whether consent to search was voluntarily given. Characteristics of the both person giving the consent, and of the environment in which the consent was given are considered. The relevant characteristics of the person are: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system. The relevant environmental factors are: (1) whether the person was detained and questioned

13

for a long or short time; (2) whether the person was threatened, physically intimidated, or punished by the police; (3) whether the person relied upon promises or misrepresentations made by the police; (4) whether the person was in custody or under arrest when consent was given; (5) whether the person was in public or a secluded place; and (6) whether the person objected to the search or stood by silently while the search occurred. See Chaidez, id, at 381. Also, "when a person consents to a search after officers state they will attempt to obtain a search warrant if the person does not consent, the consent is not necessarily coerced." United States v. Severe, 29 F.3d 444, 446 (8th Cir. 1994), cert. den. 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995).

Here, after Gers exited his hotel room and was patted down and handcuffed, law enforcement informed Gers that they needed to speak with the female inside the room. Gers called to the female in the room, "Katrina." Agent Tolsma and Agent Sheridan testified that Gers consented to their entry into the hotel room by stating "okay" in response to whether they could talk to the female. (HT p. 254, 256).

In his initial filings, Gers admitted, "Defendant LeBeau granted permission only to remove the female from his hotel room." (EFT 31, p. 1] In his later pleadings, he retracts this admission by arguing that no consent was given (EFT 144). Gers' admission in his initial brief is consistent with testimony from law enforcement that they had consent to go into the room to speak with and ultimately remove the female. Agent Tolsma knocked on the door, which was ajar. There was very loud music coming from the room and

14

the female answered from inside the room. Agent Tolsma then pushed open the door, entered and approached the female. Agent Sheridan performed a protective sweep, which revealed a white powdery substance in plain view.

Agent Youngblood removed the female from the hotel room to interview her in a separate room. Gers LeBeau and Marlin LeBeau were returned to Gers' hotel room. Their handcuffs were removed from the back and placed to the front. Gers was told that he was not under arrest and that he didn't have to talk to law enforcement. He provided information to law enforcement regarding how he met the female. Agent Tolsma asked Gers for consent to search his room. (HT p. 259) Gers signed a form entitled Permission to Search (Ex. 11). Law enforcement did not threaten that they would get a search warrant. (HT p. 272). Gers did not protest in any way while the search was going on. (HT p. 276). His demeanor was pleasant and cooperative.

The relevant characteristics of Gers are as follows: 1) Gers is of legal age; 2) his level of education is unknown; 3) Gers had consumed alcohol but there was no observable evidence of being intoxicated or under the influence of alcohol or drugs; 4) Gers consented to a search of the room after being told that he had the right to not cooperate; and 5) Gers has extensive experience with the legal system and the protections afforded to suspected criminals. In fact, during the initial evidentiary hearing in this matter, he informed Magistrate Judge Simko that he was capable of representing himself. (EFT 103, p. 125).

The relevant environmental factors are as follows: 1) at the time of the consent for the hotel room, Gers was only detained for a few minutes; at the

15

time consent was given for the 1992 Thunderbird, Gers had been detained for approximately 3 hours; 2) Gers was not threatened, physically intimidated or punished by the police. The audio tape verifies that officers were polite and courteous and Gers voluntarily engaged officers in conversation; 3) Gers was told that the reason why law enforcement was there was to investigate activities of the female and he was told that he was not going to be arrested; 4) While he consented, Gers was in a custodial setting; 5) Gers was in a public place when he consented to law enforcement talking to the female and he was in a secluded place when he consented to a search of the room; 6) Gers did not object to law enforcement entering his hotel room and he did not object when they conducted the search of his room.

The application of these factors leads me to conclude that Gers LeBeau voluntarily consented to the search of the hotel room. However, Gers argues that the consent form was forged and that his level of intoxication rendered his consent involuntary.

### a) Forgery

Gers claims that he did not sign the consent form. He put forth testimony from Wendy Carlson, a forensic document examiner and handwriting expert. Ms. Carlson opined that the signature line which purports to be the signature of Gerald LeBeau is not Gerald LeBeau's signature. (Hr'g Tr. 32) Ms. Carlson further testified that it is highly probable that the person who signed Lyle Tolsma's name also signed the purported signature of Gerald LeBeau. (Hr'g Tr. 33). Gers provided Ms. Carlson with a document purporting to be the

16

known signature of Gers LeBeau, (Ex. K-1). She was asked to compare that with the signature on Exhibit 11 to determine whether they were consistent. Ms. Carlson relied upon Exhibit K-1 being a known signature, without knowing the content of when or how Exhibit K-1 was prepared.

The government offered the testimony of Daniel P. Anderson, a document examiner with the FBI Laboratory in Quantico, Virginia. He testified that he was unable to determine whether Exhibit 11 was signed by Gerald LeBeau or not. To this point, he testified that the signature was not comparable because the writing was illegible and there were no letter formations. Furthermore, Mr. Anderson testified that in order to compare a questioned signature with a known signature, he would want at least 35 known signature documents. Mr. Anderson discredited Ms. Carlson by pointing out that the purported known signature that she relied upon in forming her opinion, consisted of just one signature, it was undated and of an unknown source.

The fact that Ms. Carlson's opinion relied upon one document which purported to be the "known" signature for comparison purposes, without requiring additional known signatures and the context in which they were given, renders her testimony less credible. Her analysis and opinions entirely hinge on whether she received an accurate "known" signature from Gers. Her opinions are further undermined by the fact that she believes it highly probable that Lyle Tolsma also signed Gerald LeBeau's signature. Even from the untrained eye of this court, there is striking similarity from Gers LeBeau's signature on Exhibit 11 and Gers LeBeau's signature on Exhibit 15. It also

17

bears mentioning that Gers signed the Permission to Search form (Exhibit 11) while he was in handcuffs. Approximately 6 hours later, Gers signed the Inmate Property Orientation Sheet. Notably, Agent Tolsma did not accompany Gers to the jail or was present when Gers signed this form.

The court rejects the testimony of Ms. Carlson and determines that based on the testimony of Agent Tolsma and Agent Sheridan, the consent form was signed by Gers LeBeau.

### b) Impairment

Gers Le Beau also argues that he was under the influence of drugs and alcohol and therefore his consent was not voluntary, knowing and intelligent. Gers implies that his speech is slurred on the audio tape and the photos reveal blood shoot eyes. The Eighth Circuit has repeatedly declined to adopt a per se rule that a waiver of *Miranda* rights is invalid because one is intoxicated when the waiver is made. See United States v. Turner, 157 F.3d 552, 555-56 (8th Cir. 1998); United States v. Makes Room For Them, 49 F.3d 410, 414 (8th Cir. 1995); United States v. Casal, 915 F.2d 1225 (8th Cir. 1990). Case law doesn't clearly describe when an intoxicated suspect "crosses the line" and becomes too intoxicated to comprehend his rights and the consequences of waiving them.

> A confession otherwise voluntary is not to be excluded because the accused was intoxicated when he made it. The fact that the confesser was intoxicated is a circumstance affecting its credibility, and is to be considered by the jury.
> If the intoxication of the confesser produced actual mania, or rendered the confesser unconscious of what he was saying, his confession is inadmissible. However, the fact that the accused had

18

but recently recovered from delirium tremens will not render his confession inadmissible.

The fact that the defendant was intoxicated when he confessed is immaterial if he had sufficient mental capacity at the time to know what he was saying and to have voluntarily intended it.

United States v. Martin, 434 F.2d 275, 278 (5th Cir. 1970) (quoting Barbara E. Bergman et. al., 2 Wharton's Criminal Evidence, 122, 388, 12th Ed. Supp. 1970) (internal citations omitted). Gers offered the testimony of forensic chemist Kathryn Engle whereby she extrapolated Gers' blood alcohol content to a range of .076 to .116 at the time when the consent form was filled out. There was no evidence regarding the amount of cocaine, if any, was in Gers' system. Ultimately, Ms. Engle testified that she couldn't render an opinion as to whether, "yes, he was impaired enough; no, he was not impaired" (Hr'g Tr. 107) and that she would defer to the persons present to judge objective impairment. (Hr'g Tr. 110). Agents Tolsma, Sheridan and Youngblood testified that they could smell alcohol on Gers, but that he showed no signs of intoxication. In listening to the audio recording, Gers was clearly coherent and very aware of what he was saying, the nature of his rights and the consequences of waiving them. Thus, his statements will not be suppressed because he was not so intoxicated as to render his statements involuntary.

## 2. Whether Gers gave consent for the initial entry of the hotel room.

The parties introduced extensive evidence regarding whether Gers consented to law enforcement initially entering the hotel room. Such a determination is unnecessary if there is subsequent consent to search

19

sufficient to purge the taint of the claimed Fourth Amendment violation. United State v. Whisenton, 765 F.3d 938 (8th Cir. 2014). "When an illegal entry precedes a defendant's grant of consent to search, the Government must show (1) that the defendant's consent was voluntary and (2) that the 'consent was an independent act of the defendant's free will that purged the taint of the Fourth Amendment violation.'" Id. (quoting United States v. Greer, 607 F.3d 559, 564 (8th Cir.2010); United States v. Lakoskey, 462 F.3d 965, 975 (8th Cir.2006)). "To determine whether the defendant's consent purged the taint of the illegal entry, we consider '(1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the agent's Fourth Amendment violation.'" Id. (quoting United States v. Barnum, 564 F.3d 964, 971 (8th Cir.2009)). "We also consider 'the giving of *Miranda* warnings where applicable.'" Id. (quoting Greer, 607 F.3d at 564).

Here, the audio indicates that *at least* 7 minutes elapsed from the time law enforcement entered the hotel room and from when Gers gave consent to search the room. It is unknown how much time actually elapsed because the audio recorder malfunctioned when it appeared that law enforcement was preparing to ask for Gers' consent. The Eighth Circuit has found sufficient passage of time in as little as 9 minutes and 35 seconds. United States v. Esquivel, 507 F.3d 1154, 1160 (8th Cir. 2007). During that time, Gers was in the hall while law enforcement questioned the female inside the room. This

would have given him time to pause and reflect, to decline to consent or to revoke consent.

As to the second factor, once Gers was taken inside the hotel room, his handcuffs were repositioned in front of Gers' body and law enforcement informed Gers that he didn't have to talk to them. After being told that he could refuse to talk to law enforcement, he signed a consent form, thus providing not only verbal consent, but written consent acknowledging that his consent was voluntary and that law enforcement could take whatever they deemed pertinent. Gers stated that he had nothing to hide and was just gambling.

As to the final factor, we look to the purpose and flagrancy of the agent's Fourth Amendment violation. It should be noted that the court hasn't made a determination that a Fourth Amendment violation actually occurred. In fact, there are facts that support a finding that the government has met its burden that Gers consented to the initial entry of the hotel room. Additionally, exigent circumstances may have existed to enter the hotel room, given law enforcement's reasonable belief that two suspected drug dealers and/or users were in the hotel room and the evidence could have been destroyed. Here, law enforcement did not enter violently and they had a purpose of investigating a female present in Gers' hotel room and believed to be involved with narcotics. If there was a Fourth Amendment violation, it certainly wasn't flagrant.

In conclusion, assuming without deciding that the initial entry was in violation of the Fourth Amendment, Gers' consent to search was sufficient to purge the taint of the claimed Fourth Amendment violation.

### D. Consent to search 1992 Ford Thunderbird

Gers argues that he did not voluntarily give consent to law enforcement to search his 1992 Ford Thunderbird. The analysis to resolve whether consent was given is set forth above. Here, the audio very clearly indicates that Gers verbally agreed and gave his consent to the search of his 1992 Ford Thunderbird. Again, he was not impaired so as to negate the voluntariness of his consent. The court finds that Gers gave consent to search his Thunderbird and the evidence obtained therefrom should not be suppressed.

### E. Defendant Gers LeBeau's Motion to Suppress Post-arrest statements

Gers was placed under arrest, seated in the patrol car, and read his Miranda Rights. He indicated that he understood them and asked to speak with a lawyer. Law enforcement discontinued questioning Gers at this point. Gers now seeks to suppress the statements made by him after his arrest.

"Under *Miranda*, the government is prohibited from using statements made during custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against compulsory self incrimination and right to an attorney. Because '[v]olunteered statements of any kind are not barred by the Fifth Amendment' *Miranda* concerns do not arise in the absence of police interrogation, however. Interrogation is not limited to "express questioning," for it also includes "any words or actions on the part of the police

22

(other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005)(citing Miranda v. Arizona, 384 U.S. 436 (1966); Rhode Island v. Innis, 446 U.S. 291, 301, (1980)).

Agent Cooper testified that Gers was placed under arrest, seated in the patrol car and Agent Sheridan read Gers his *Miranda* rights. Gers indicated that he understood and he requested a lawyer. (Hr'g Tr. 140-141). Agent Cooper testified that law enforcement didn't ask Gers anything further. Id. Thereafter, during the 40-45 minute drive to the jail, Gers engaged law enforcement in conversation discussing his gambling habits and gambling strategies.

Given that law enforcement did not ask him anything on the way to the jail and there is no evidence refuting Agent Cooper's testimony, the court concludes that Gers' statements were voluntary statements which were not the product of interrogation and therefore, should not be suppressed.

### F. Validity of the January 16, 2014 Search Warrants (FEMA Trailer, Verizon Cell Phone and 1992 Thunderbird) and Motion for a **Franks** hearing

Defendant Gers filed two motions addressing the above issues (ECF No. 30 and ECF No. 142). The motions are overlapping and will be addressed together.

### 1. Preliminary Showing for a **Franks** Hearing

As a preliminary matter, a defendant is only entitled to a Franks hearing if he makes a substantial showing that an affiant to a search warrant

application knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts and that the alleged statements were necessary to a finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). "Whether [the defendant] will prevail at that hearing is, of course, another issue." Id. at 172.

The Fourth Amendment requires that a search warrant may be issued only upon a showing of probable cause. United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007). In order to challenge a finding of probable cause under Franks, a defendant must show, by a preponderance of the evidence, that (1) the affiant, in preparing the search warrant affidavit, deliberately and knowingly, or with reckless disregard for the truth, included falsehoods; and (2) the affidavit lacks sufficient content to support a finding of probable cause if the challenged information is set aside. Franks, 438 U.S. at 171-72; United States v. Humphreys, 982 F.3d 254, 259 n.2 (8th Cir. 1992). The same analysis applies to omissions of facts in that the defendant must show (1) that the affiant intentionally or recklessly omitted material facts thereby making the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. Humphreys, 982 F.3d at 259 n.2. The defendant's challenge must be more than conclusory and must be supported by the evidence. Franks, 438 U.S. at 171. The defendant must specify which parts of the affidavit are claimed to be false and must provide a statement of supporting reasons or an "offer of proof." Id. Finally, the defendant may only challenge the veracity of the affiant's statements and

not that of nongovernmental informants because a reviewing court is

concerned only with whether the affiant knowingly and deliberately included

falsehoods or recklessly omitted the truth. Id. See also United States v. Ball,

No. 06-4135, * 5 (8th Cir. Aug. 22, 2007); United States v. Amburn, 412 F.3d

909, 917 (8th Cir. 2005) (both citing Franks v. Delaware, 438 U.S. 154, 171

(1978)).

"To show reckless disregard for the truth, we do not look simply at

whether a statement included in the affidavit was true; rather, we ask whether,

when looking at all the evidence available to the officer, the officer 'must have

entertained serious doubts as to the truth of his [or her] statements or had

obvious reasons to doubt the accuracy of the information he [or she] reported.'"

United States v. Neal, No. 07-1941, at *4 (8th Cir. June 16, 2008) (quoting

United States v. Schmitz, 181 F.3d 981, 986-987 (8th Cir. 1999) (quoting

United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)) (alterations in

original). Under this standard, "every fact recited in the warrant affidavit [need

not] necessarily [be] correct." United States v. Buchanan, slip op. 08-3515 (8th

Cir. July 27, 2009) (quoting Franks, 438 U.S. at 165).

An affidavit submitted in support of a search warrant carries a

presumption of validity. Neal at *5 (citing Franks, 438 U.S. at 171). Showing

that an affiant was negligent or made an innocent mistake is not sufficient to

show a Franks violation. Id. "Nevertheless, an officer may not circumvent the

Franks doctrine by providing only selective information to another officer who

is unaware of the full information and therefore includes false information or

25

omits material information from an affidavit in support of a warrant." Id.
(citing United States v. Davis, 471 F.3d 938, 947 n.6 (8th Cir. 2006) (citing
Franks, 438 U.S. at 164 n.6) ("where law enforcement authorities are
cooperating in an investigation, as here, the knowledge of one is presumed
shared by all").

If an application for a search warrant is based in part on information
obtained from a confidential informant, the evidence from the search will not
be suppressed based on Franks if the affiant who applied for the search
warrant failed to recount the confidential informant's criminal history. See
United States v. Pruett, No. 06-3500 (8th Cir. Sept. 6, 2007) (where omission of
CI's criminal history was due to the fact that affiant did not have access to CI's
criminal history at the time he completed the warrant application); United
States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002) (holding that omission of CI's
criminal history did not support exclusion of evidence of search where affiant
did not know the exact nature of the criminal history). See also United States
v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996) (details of CI's record not
material where magistrate knew generally of CI's crimes and the CI's credibility
was supported by other evidence).

Gers' argument is premised upon the fact that the woman who was with
Lloyd Nickel was Jessica Fields and that hotel staff was incorrect about the
identity of the woman who was with Gers LeBeau, whom they believed to be
Jessica Fields. Gers called investigator Mark Pecora who testified that he
contacted Lloyd Nickel in federal prison in Terra Haute, Indiana. Mr. Nickel

26

informed Mr. Pecora that he was with Jessica Fields in Deadwood. He testified that he does not know a person named Tyra Smith. Gers also called Tyra Smith who testified that she has never met Jessica Fields and she doesn't know anyone by the name of Lloyd Nickel.[3] However, at the time law enforcement knocked on the hotel room they were relying on information voluntarily provided by hotel staff that the female with Gers was Jessica Fields. Additionally, at the time Agent Cooper prepared his affidavit, he had information that the female with Gers both went by "Katrina" as well as Tyra Smith.

The Eighth Circuit has held that an officer "may rely upon information received through an informant...so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge," United States v. Koons, 300 F.3d 985, 991 (8th Cir. 2002). Here, the informants reviewed video tape with the officers and had a hotel employee walk past the female in Gers' hotel room in an effort to confirm that she was Jessica Fields, the woman associated with Lloyd Nickel. It is undisputed that the hotel staff identified Tyra Smith (the female with Gers) as being the same woman he believed to be Jessica Fields. (Hr'g Tr. 477). Agent Cooper's reliance on this information does not constitute knowingly and deliberately including falsehoods or recklessly omitting the truth. In the absence of a showing that

---

[3] The testimony regarding the identity of the female in the room was offered by Tyra Smith, a convicted felon. Additionally, Mark Pecora provided hearsay testimony regarding his interview with Lloyd Nickel, a convicted felon. The court finds that neither Tyra Smith or Lloyd Nickel (via hearsay testimony of Mark Pecora) are credible witnesses.

Agent Cooper knowingly and deliberately included a falsehood or recklessly, Gers is not entitled to a Franks hearing.

### 2. Validity of the Search Warrant

"A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause." United States v. Sierra-Garcia, 760 F.Supp. 252, 262 (E.D.N.Y. 1991) (citations omitted). The standard of proof is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, (1972). A "reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). Further, affidavits supporting search warrants are considered presumptively valid. Franks, 438 U.S. at 171. "Probable cause requires that the circumstances set forth in an affidavit supporting an application for a search warrant demonstrate a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001) (quoting Gates, 462 U.S. at 238)).

In determining whether probable cause exists, courts look to the totality of the circumstances and consider all the facts "for their cumulative meaning" rather than evaluating each fact independently. Williams, 10 F.3d at 593; Tyler, 238 F.3d at 1038. "Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a

hypertechnical fashion." Williams, 10 F.3d at 593 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

The key question in determining whether a search warrant is supported by a finding of probable cause is whether, viewing all of the information collected by law enforcement as a whole, a "reasonable person could suspect that a search would uncover evidence of crimes committed by [the defendant]." Tyler, 238 F.3d at 1038.

> The Supreme Court summarized the probable cause standard as follows:
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

Gates, 462 U.S. at 238-30). In considering the totality of the circumstances, Agent Cooper's affidavit contained knowledge of Gers' extensive history with distributing illegal narcotics, as well as the recent seizure of 4.5 ounces of cocaine from Gers' Thunderbird. Gers has failed to meet his burden of showing that the warrant was issued without probable cause.

### 3.  Jurisdiction of Circuit Court Judge Robert Gusinsky

In ECF No. 30, Gers argues that the state circuit court judge lacked the authority and/or jurisdiction to issue a search warrant for property located in Indian county. Gers again raised that issue by separate motion (ECF No. 157), which is discussed at length in Issue IV below. For the reasons set forth in

Section, ** this court finds that Circuit Court Judge Robert Gusinsky had authority to issue the search warrants.

**Issue II.    Motions to Suppress Tape Recorded Jail Telephone Calls (ECF No. 129, ECF No. 154)**

Defendants both argue that it was a violation of their rights under the Fourth Amendment for the Pennington County Jail to tape record his conversations. Gers LeBeau and Neil LeBeau urge that their taped telephone conversations be suppressed on this ground.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 - 2521 prohibits the recording of oral or wire communications without a warrant and makes illegally taped recordings inadmissible at trial. However, section 2510(5)(a)(ii) of the Act makes an exception to this rule for tape recording of telephone conversations done by an investigative or law enforcement officer in the ordinary course of his duties. Where a law enforcement regularly records certain categories of conversation, such as telephone calls from inmates, such tape recordings fall within the exception of section 2510(5)(a)(ii) and, thus are legal and admissible. See United States v. Horr, 963 F.2d 1124, 1125-1126 (8th Cir. 1992). Furthermore, where notices are given to inmates that clearly indicate that telephone calls are taped, an inmate's proceeding to make calls under those circumstances constitute an implied consent to having his calls taped. Id. See also United States v. Eggleston, 165 F.3d 624, 626 (8th Cir. 1999). Here, the recordings clearly contain a message to both the inmate and the recipient that the call is being recorded. Gers was familiar with the recording and instructed the recipients

30

that they could skip the warning.  Defendants' motions to suppress his taped

telephone statements on Fourth Amendment grounds is denied.

**Issue III.    Gers LeBeau's Motion to Suppress Sealed Envelopes and Motion for a Frank's hearing (ECF No. 140)**

As a preliminary matter, it should be noted that Gers initially filed the

Motion to Suppress Sealed Envelopes and Motion for a Frank's hearing.  Neil

subsequently filed a Motion to Join in Gers' Motion regarding the sealed

envelopes.  No further briefing was submitted by Neil on this issue.  The court

will first address whether Neil has a right to join in Gers' motion.

**A.    Neil's Motion for Joinder (ECF No. 163) of Gers LeBeau's Motion    to Suppress Sealed Envelope and Motion for a Frank's hearing**

Neil claims a privacy interest in the sealed envelope which was in the

possession of Gers and addressed to Neil and ultimately obtained pursuant to

a search warrant.  The government argues that Neil LeBeau does not have a

legitimate expectation of privacy in the evidence to be suppressed.  (ECF No.

200 at p. 10).

This single letter in which Neil claims an expectation of privacy was

originally in the possession of Gers and confiscated by US Marshals.

"Because [F]ourth [A]mendment rights are personal, a person challenging a

search warrant must demonstrate that he or she has a legitimate expectation

of privacy in the area searched . . . . By establishing a legitimate expectation of

privacy the person establishes his or her standing to challenge the search."

United States v. Wiley, 847 F.2d 480, 481 (8th Cir. 1988) (citing United States

v. Nabors, 761 F.2d 465, 468 (8th Cir. 1985)).  If a defendant fails to prove a

sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994) (quoting United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994)). Moreover, "Fourth Amendment rights are personal and cannot be asserted vicariously." United States v. Pierson, 219 F.3d 803 (8th Cir. 2000). The party moving to suppress, which in this case is Neil, has the burden of proving a reasonable expectation of privacy in the area [or item] searched. Id.

Neil offers no evidence, other than the fact that the letter was addressed to him, that he had a reasonable expectation of privacy. He provides no authority in support of the proposition that an unmailed, sealed envelope still in the possession of the purported writer of the letter creates a reasonable expectation of privacy in the sealed envelope. It is recommended that Neil LeBeau's Motion to Join Defendant's Motion to Suppress Sealed Envelopes and Motion for Frank's hearing be denied.

**B. Documents provided by Scott Burleson and Pablo LeBeau**

Gers moves to suppress "other correspondence attributed to Mr. LeBeau." Presumably, Gers is referring to the letters provided by Scott Burleson (and his attorney) and Pablo LeBeau (and his attorney), to law enforcement. Gers does not specifically set forth argument or authority regarding the illegality of these specific documents. "[An] agent's viewing of what a private party had freely made available for his inspection does not violate the Fourth Amendment." United States v. Jacobsen, 466 U.S. 109, 119

(1984). No is no evidence that law enforcement did not directed Scott Burleson or Pablo LaBeau to steal anything from Gers LeBeau. Instead, the testimony is that both voluntarily gave these documents to law enforcement. Therefore, they were acting as private individuals and not acting as a law enforcement agent or with the participation or knowledge of law enforcement. Jacobsen, 466 U.S. at 114. These documents were not obtained in violation of the Fourth Amendment should not be suppressed.

### C. Note between Gers LeBeau and Luke Pond

Presumably, Gers also moves to suppress the note/letter written by Gers LeBeau to Luke Pond. Letters are in the general class of effects protected by the Fourth Amendment. Jacobsen, 466 U.S. at 119. Gers argues that the [note/letter is] privileged of which he has a legitimate expectation of privacy. (Mot. Suppress 4, ECF No. 141). Agent Cooper testified that there were notes passed between Gers LeBeau and Luke Pond. (Hr'g Tr. 161). Luke was caught with the note and he provided it to the jail, which in turn provided it to Agent Cooper.

The government argues 1) that if a letter is sent to another, the sender's expectation of privacy ordinarily terminates on delivery; 2) prison inmates, including pretrial detainees do not have a legitimate expectation of privacy in the their prison cells or in their outgoing non-privileged mail; and 3) the note does not constitute mail.

Gers does not offer any argument or authority in support of his position. Here, once the note/letter was passed to Luke Pond, Gers no longer maintained

an expectation of privacy in the note and it was not obtained in violation of the Fourth Amendment.

## D. Sealed envelopes obtained through a search warrant.

### 1. Franks hearing

The court first addresses Gers' Motion for a Franks hearing. The applicable standard for a Franks hearing is set forth above and incorporated herein by reference. In summary, a defendant is not entitled to an evidentiary hearing on the veracity of an affidavit in support of a search warrant simply by raising the issue. As a preliminary matter, a defendant is only entitled to a Franks hearing if he makes a substantial showing that an affiant to a search warrant application knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts and that the alleged statements were necessary to a finding of probable cause. Franks v. Delaware, 438 U.S. at 155-56 (1978). As the Franks Court explained:

> To mandate an evidentiary hearing [as to the veracity of statements in the affidavit in support of the search warrant], the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Id. at 171. Even if falsehoods are demonstrated, if-setting aside those falsehoods- there is still probable cause to support the issuance of the warrant, no hearing is to be held. Id. at 171-72.

Gers argues that the affidavit for the search warrant was misleading because it omitted facts with the intent to make the affidavit misleading. Gers prepared a list of "facts" he believes are facts which included in the affidavit, the judge would not have issued the warrant. The vast majority of these "facts" are legal arguments which have been rejected by this court.

The court finds that Gers is not entitled to a <u>Franks</u> hearing because he has not made a substantial showing that Agent Miller knowingly, or with reckless disregard made false statements or omitted material facts.

### 2.  Probable cause

Gers next argues that the warrant was issued without probable cause. The burden of proof is on the defendant who seeks to suppress evidence. <u>United States v. Phillips</u>, 540 F.2d 319 (8th Cir.1976). "A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause." *United States v. Sierra-Garcia*, 760 F.Supp. 252, 262 (E.D.N.Y. 1991) (citations omitted). The standard of proof is a preponderance of the evidence. <u>Lego v. Twomey</u>, 404 U.S. 477 (1972).

Gers argues that the affidavit lacked probable cause because it discusses 1) letters improperly obtained without Gers' consent or a warrant; and 2) the jail telephone phone calls were improperly obtained without Gers' consent or a warrant. He further argues that Agent Miller's affidavit lacks facts to establish any legal connection between the envelopes and/or the phone calls and that

LeBeau and the information in the phone calls and the letters were unreliable and lack authenticity.

The court has previously determined that the letters and phone calls were properly obtained by law enforcement and did not violate Gers' Fourth Amendment Rights, therefore these arguments are moot. Regarding Gers' remaining argument that the search warrant lacked probable cause, we turn to the standard for determining probable cause. "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' 'probable cause to issue the warrant has been established.'" United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (citing United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause requires only a showing of fair probability, not hard certainties." United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir. 2008). Whether a search warrant is supported by probable cause is to be determined by considering the totality of the circumstances. Grant, 490 F.3d at 632. The issuing judge's resolution of the issue of probable cause should be paid "great deference by reviewing courts." Id. (quoting Gates, 462 U.S. at 236) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

The totality of the circumstances reveals that law enforcement was familiar with Gers' voice and obtained statements from the jail recording wherein Gers discussed his ongoing drug operation; Pablo LeBeau voluntarily provided law enforcement with a letter written by Gers instructing Pablo to not

say anything; Scott Burleson voluntarily provided law enforcement with a letter which Gers attempted to mail in violation of jail policy to Pablo LeBeau; and these letters contained instructions from Gers to witnesses regarding their testimony and his ongoing drug operations. This constitutes probable cause for the warrant allowing law enforcement to open the sealed envelopes found in Gers' possession

**Issue IV.    Motion to Suppress Evidence Taken from Tribal Land For Lack of Jurisdiction (ECF No. 157)**

Gers initially filed a Motion to Suppress Evidence Taken from Tribal Land for Lack of Jurisdiction and Motion for a Frank's hearing.  Neil subsequently filed a Motion to Join in Gers' Motion regarding the evidence taken from tribal land.  No further briefing was submitted by Neil on this issue.  The court will first address whether Neil has a right to join in Gers' motion.

**A.       Defendant Neil LeBeau's Motion for Joinder (ECF No. 160)**

As stated above, Neil has the burden of proving that he had a reasonable expectation of privacy in order to establish standing to challenge the validity of the search. See Wiley, 847 F.2d at481 (8th Cir. 1988).  If Neil fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994).  Moreover, "Fourth Amendment rights are personal and cannot be asserted vicariously." United States v. Pierson, 219 F.3d 803 (8th Cir. 2000).

Neil LeBeau again offers no evidence other than his bare assertion in his motion that he can claim a privacy interest in the places search.  Neil has failed

to provide any evidence which would establish a sufficiently close connection to Gers' 1992 Firebird, Gers' Verizon cell phone, Gers' FEMA trailer, Margaret Clark's residence, or a light/electric pole near the Susan Shrader's residence to establish standing. It is recommended that Neil LeBeau's Motion to Join Defendant's Motion to Suppress Evidence Taken From Tribal Land be denied.

## B. Jurisdiction

Gers LeBeau argues that all evidence taken from tribal land be suppressed because the Seventh Circuit Court Judge Robert Gusinsky lacked jurisdiction to issue a search warrant. This same argument was raised and rejected by the Eighth Circuit Court of Appeals in the case of United States v. Chipps, 410 F.3d 438 (8th Cir. 2005). In Chipps, the defendant argued that South Dakota Circuit Judge John E. Fitzgerald did not have authority to issue a federal warrant. The Eighth Circuit rejected this argument and held:

Rule 41(b)(1) installs the state judge as a proxy for the federal magistrate, and for the state judge to be an effective proxy, he or she should have the same territorial territorial jurisdiction (i.e., the same ability to issue a warrant) as a federal magistrate. See generally Fed.R.Crim.P. 2; United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952). Interpreting "district" to mean federal district throughout the rule ensures that state judges and federal magistrates have the same territorial reach under Rule 41(b)(1).

410 F.3d at 446. The Eighth Circuit rejected Chipps' argument, which is identical to Gers LeBeau's argument and stated, "We can locate no legal bar, either constitutional or statutory, to authorizing state courts to issue federal warrants for searches and seizures that are to take place outside of the state court's state jurisdiction." Id.

A judge of a state court of record in the district has the authority to issue a warrant if the magistrate judge is reasonably unavailable. Fed. Rule. Crim. P. 41(b)(1). The record demonstrates that Magistrate Judge Duffy was unavailable and when presented with the application for the search warrant, District Court Judge Viken recused himself. This suffices as "reasonably unavailable" in order to trigger the authority of a state court judge.

Gers LeBeau also argues that the government has failed to provide a "certification or finding satisfactorily explaining the unavailability of a United States Magistrate Judge within the State of South Dakota." (Mot. Suppress 4, ECF No. 159). Gers fails to cite any authority in support of the proposition that there must be such a showing made. The defendant in Chipps also raised this same argument, without authority, which was rejected by the Eighth Circuit by stating, "Mr. Chipps's assertion that there was no showing of unavailability does not suffice to satisfy this standard." Id. (citing United States v. Brooks, 175 F.3d 605, 606-07 (8th Cir. 1999)). Likewise, Gers LeBeau's argument is rejected on the same basis that there is no authority cited which would establish such a criteria. The Court recommends that the Motion to Suppress Evidence Taken from Tribal Land for Lack of Jurisdiction (ECF No. 157) on the grounds of lack of jurisdiction be denied.

## C. Margaret Clark residence and electric pole near the Susan Schrader residence

A defendant challenging a search has the burden to establish "that he personally has an expectation of privacy in the place searched, and that his expectation of privacy is reasonable . . . ." Minnesota v. Carter, 525 U.S. 83, 88

(1998).  The challenger must prove that the expectation of privacy is subjectively reasonable and objectively reasonable, "that is, one that society is willing to accept." United States v. McCaster, 193 F.3d 930, 933 (1999). Moreover, "Fourth Amendment rights are personal and cannot be asserted vicariously." United States v. Pierson, 219 F.3d 803 (8th Cir. 2000).

"[I]n some circumstances a person may have a legitimate expectation of privacy in the house of someone else." Carter, 525 U.S. at 89. For example, an overnight guest may have a legitimate expectation of privacy: "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." Id. (citing Minnesota v. Olson, 495 U.S. 91, 98-99 (1990)).

When analyzing whether the defendant may claim a reasonable expectation of privacy in the home of another, courts should consider several relevant factors: "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." McCaster, 193 F.3d at 933.

Here, Margaret Clark testified that only she and her sister, Twila, had a key to her residence. She also testified that she allowed relatives to stay at her house, if they needed a place to stay. There was no testimony that Gers had any possessory interest in the things seized or the place searched. Margaret Clark testified that she consented to the search of her home.

Gers LeBeau presented no evidence to establish he had a subjective expectation of privacy in the home of Margaret Clark. Without making such a showing, the Defendant lack standing to challenge the search.

**Issue V.    Motion to Suppress Evidence Obtained During 2012 Traffic Stop (ECF No. 161)**

Neil LeBeau moves to suppress evidence obtained by the South Dakota Highway Patrol on August 4, 2012, on the grounds that the evidence was obtained in violation of the Fourth Amendment. The government filed a response indicating that it would not use any evidence obtained from the August 2012 traffic stop. Because the government does not intend to offer the contested evidence at trial, the court need not reach the merits of this motion to suppress. Accordingly, it is recommended that Neil LeBeau's Motion to Suppress Evidence re: 2012 Traffic Stop be denied as moot.

## RECOMMENDATION

As to Gerald LeBeau's Motion to Suppress (ECF No. 30) it is respectfully recommended that the portion relating to Ger's pre-arrest statements be denied as moot.

As to the remaining claims in Gerald LeBeau's Motion to Suppress (ECF No. 30) it is respectfully recommended that the remaining basis for the motion be denied.

As to Gerald LeBeau's Motion to Suppress Tape Recordings of Jail Telephone Calls (ECF No. 129) it is respectfully recommended that the motion be denied.

41

As to Neil LeBeau's Motion to Suppress Recorded Telephone Conversations (ECF No. 154) it is respectfully recommended that the motion be denied.

As to Gerald LeBeau's Motion to Suppress Sealed Envelopes and Motion for a Frank's hearing (ECF No. 140) it is respectfully recommended that the motions be denied.

As to Neil LeBeau's Motion to Join (ECF No. 163) Gerald LeBeau's Motion to Suppress Sealed Envelopes and Request for a Frank's hearing it is respectfully recommended that the motion be denied.

As to Gerald LeBeau's Second Motion to Suppress Statements and Evidence and Request for a Frank's hearing (ECF No. 142) it is respectfully recommended that the motion be denied.

As to Gerald LeBeau's Motion to Suppress Evidence Taken from Tribal Land (ECF No. 157) it is respectfully recommended that the motion be denied.

As to Neil LeBeau's Motion to Join Gerald LeBeau's Motion to Suppress Evidence Taken from Tribal Land (ECF No. 160) it is respectfully recommended that the motion be denied.

As to Neil LeBeau's Motion to Suppress Evidence re: 2012 traffic stop (ECF No. 161) it is respectfully recommended that the motion be denied as moot.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1),

42

unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this _10th_ day of June, 2015.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge