UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GERALD WAYNE LEBEAU and<br>NEIL THOMAS LEBEAU,<br><br>Defendants. | 5:14-CR-50048-KES<br><br><br>ORDER ON MOTION TO DISMISS<br>THE SUPERSEDING INDICTMENT,<br>MOTION TO RECUSE, AND MOTION<br>TO JOIN |

Pending are pretrial motions filed by defendants Gerald Wayne LeBeau and Neil Thomas LeBeau.

## BACKGROUND

Defendants were indicted on May 20, 2014, on one count of conspiracy to distribute a controlled substance (cocaine) and one count of conspiracy to distribute a controlled substance (marijuana). Gerald was also indicted on a separate count alleging possession with intent to distribute a controlled substance (cocaine). On August 26, 2014, the government filed a superseding indictment charging the three previous counts and adding a fourth count charging Gerald with witness tampering.

Defendants have filed numerous motions. This court now addresses the following motions:

1. Gerald's motion to dismiss the superseding indictment for a due process violation (Docket 151).

2. Gerald's motion for recusal (Docket 211).

3. Neil's motion to join Gerald's motion for recusal (Docket 244).

## DISCUSSION

### I. Motion to Dismiss the Superseding Indictment

Gerald argues that the prosecution's failure to preserve video recordings allegedly containing exculpatory evidence requires dismissal of the charges against Gerald. Docket 152. The United States responded, asserting that the video recordings were never in its control and that Gerald has not shown any bad faith. Docket 172.

The evidence in question is surveillance footage taken by Cadillac Jack's Hotel and Casino on January 10, 2014. Gerald contends the video footage would show "that Tyra Smith is not Jessica Fields, that [Gerald] did not consent to any search, and that Agent Tolsma entered [Gerald's] room without consent." Docket 152 at 1. Gerald also argues that the failure to preserve the video footage amounts to bad faith. *Id.* at 2.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. When the exculpatory value is not known, however, a showing of bad faith is necessary. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58.

Gerald does not provide any indication of what he thinks the tapes may show. The government states that law enforcement viewed the surveillance footage to see which room the individual they believed to be Jessica Fields entered. *See* Docket 172 at 1. Despite Gerald's unsupported claims that the evidence on the tapes would have been clearly exculpatory, the actual evidentiary value of the tapes is unclear. Rather than showing that the evidence in question would be material to his guilt or potential punishment, Gerald only argues that the footage would assist him in litigating his suppression motion. Because the exculpatory value of the evidence in question is unclear, this case is more like *Youngblood* than *Brady*. *See Youngblood*, 488 U.S. at 57 (distinguishing *Brady* from circumstances in which the prosecution failed to preserve evidence of unknown exculpatory value). Gerald's failure to make any showing of bad faith on the part of the prosecution is fatal to his claim. *Id.* ("Our decisions in related areas have stressed the importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government.").

Gerald nonetheless urges the court to apply *Brady* and find a due process violation without inquiring into whether the government acted in bad faith. Docket 152 at 2-3. The government never possessed the footage, so Gerald's argument that counsel's preservation request put the government on

3

notice that it would be required to turn over the tapes is unpersuasive.[1] *See* Docket 152-1 at 5 (boilerplate request for preservation of evidence directed at evidence already in the possession, custody, or care of the government). It is also unclear whether the government received Gerald's request in time to preserve the evidence. *See* Docket 152 at 2 (claiming the videos were preserved for at least ten days); Docket 152-1 (preservation letter dated five days after Gerald's arrest). "*Brady* does not require the government to discover information not in its possession or of which it was not aware." *United States v. Heppner*, 519 F.3d 744, 750 (8th Cir. 2008) (citing *United States v. Turner*, 104 F.3d 217, 220 (8th Cir. 1997)). Gerald does not argue, much less provide any evidence, that the government ever possessed or constructively possessed the footage in question.

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Gerald provides no evidence or argument, other than speculation, that material exculpatory information might be found on the video recordings. Because Gerald's assertion is wholly conclusory, the court has no way of determining if the footage is material. Such speculation is insufficient to establish a *Brady* violation. *See United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the

---

[1] In his reply, Gerald focuses only on the obligation created by the preservation request and does not discuss *Brady* or *Youngblood*. *See* Docket 204 at 10-11.

defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

Gerald also makes no showing that he was unaware of the footage or that he could not have obtained the footage through the exercise of the same diligence he would require of the prosecution. "Evidence equally available to the defendant by the exercise of due diligence means that the government is not obligated under *Brady* to produce it. Similarly, if the defendant knows about the exculpatory information, then the government's failure to disclose it is not a *Brady* violation." 2 Charles Alan Wright et al., *Federal Practice & Procedure Criminal* § 256 (4th ed.).

*Brady* did not create a discovery rule. *See Bagley*, 473 U.S. at 675 n.7 (quoting *Giles v. Maryland*, 386 U.S. 66, 117 (1967) (Harlan, J., dissenting)) ("An interpretation of *Brady* to create a broad, constitutionally required right of discovery 'would entirely alter the character and balance of our present systems of criminal justice.' ") Gerald asks the court to dismiss the charges against him because a third party destroyed evidence of unknown probative value in its normal course of business. That is not the proper application of *Brady*. Even without inquiring into whether the government acted in bad faith, Gerald has not shown a *Brady* violation. Gerald's motion to dismiss the superseding indictment (Docket 151) is denied.

5

## II. Motion for Recusal

Gerald moves this court to recuse itself from any further involvement in this case. Docket 211.[2] Specifically, Gerald contends that this court's familiarity with the prosecutor and case agent, and with Gerald's past criminal cases, creates an appearance of impropriety sufficient to justify recusal. Docket 212 at 5-6 (listing alleged conflicts). The United States has not responded to the motion.

"Any justice, judge, or magistrate just of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This section imposes an objective standard, requiring a judge to determine " 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.' " *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 503 (8th Cir. 2014) (quoting *In re Kan. Pub. Emp. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996)). Section 455 separately lays out specific circumstances in which recusal is also required, including situations where a judge has a bias or prejudice concerning a party or personal knowledge of disputed facts, where a judge was previously in private practice with a lawyer on the matter in controversy, or where a judge was in government employment and expressed an opinion concerning the merits of the particular case. *See* 28 U.S.C. § 455(b). "Because a 'judge is presumed to be impartial,' a party seeking recusal 'bears

---

[2] Neil moves to join Gerald's motion for recusal. Docket 244. The motion to join is granted.

the substantial burden of proving otherwise.' " *Id.* (quoting *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)).

Gerald bases his argument in part on the court's past professional relationship with Assistant United States Attorney McBride and FBI Special Agent Cooper. Docket 212 at 1-3, 5. According to Gerald, the court developed a familiarity with McBride and Cooper while the court served as United States Attorney almost 16 years ago. Gerald does not contend that the court has any familial, personal, or financial connections that appear improper.

Gerald provides no authority holding that a past professional relationship suggests an appearance of impropriety. Gerald's assertion would prevent this court from presiding over most, if not all, criminal cases in this district. And given the relatively small bar in the state of South Dakota, most judges would encounter similar problems.

The court does not believe there is any appearance of impropriety in this case due to its professional familiarity with Attorney McBride and Special Agent Cooper. The court left the United States Attorney's Office almost 16 years ago. Additionally, the mere existence of a professional relationship does not create an objectively reasonable doubt about a judge's impropriety. *See Blalock v. United States*, 844 F.2d 1546, 1552 (11th Cir. 1988) (dismissing an argument "that the district judge should have recused himself because his favorable relationship with the prosecutor and the FBI agents destroyed his impartiality"). The court sees no specific facts in this case suggesting an appearance of impropriety based on past professional relationships.

Gerald also contends that the court's familiarity with him gives the court knowledge of factual issues and evidentiary issues that may have led the court to develop a negative impression of Gerald.[3] The court has no *first-hand* knowledge of the facts in Gerald's past case or in this case. Any information known to the court about Gerald's previous case the court learned in the course of the criminal proceedings and jury trial. Such knowledge does not require recusal. *See Liteky v. United States*, 510 U.S. 540, 550-51 (1994) (noting it is "normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant"). Also, the fact that the court found by a preponderance of the evidence that Gerald had used a controlled substance and revoked his supervised release does not reflect a bias against Gerald—Gerald *admitted* to the violation of his conditions of supervised release. *See* Docket 212-4 at 3 (admitting to possession and use of a controlled substance). At that hearing, the court went on to make several positive comments about Gerald. *See id.* at 16-17 (telling Gerald that he had done well at first on supervision and that probation was there to help him); *id.* at 18 ("I give you a lot of credit for doing as well as you did for over a year and a half."). Gerald's argument regarding a bias against him is unfounded.

The court's past professional familiarity with Attorney McBride and Special Agent Cooper and the court's familiarity with Gerald's past do not

---

[3] It is unclear whether Gerald believes the court's allegedly negative impression stems from Gerald's past criminal conduct or the fact that Gerald appealed the court's decisions twice. *See* Docket 212 at 6. Neither basis is true and neither basis creates an appearance of impropriety.

create any reasonable question as to the court's impartiality. The court sees no reason that its continued involvement in this case might create any doubt as to the integrity of the judicial system.[4] Instead, defense counsel appears to be "grasping at straws blowing in the wind in order to litigate this case further." *Hammer*, 754 F.3d at 504. The motion to recuse brought by Gerald and joined by Neil is denied.

## CONCLUSION

Gerald LeBeau has not shown any basis for dismissal under either *Brady* or *Youngblood*. Gerald and Neil LeBeau have not shown any basis for recusal. Accordingly, it is

ORDERED that Gerald LeBeau's motion to dismiss the superseding indictment (Docket 151) is denied.

IT IS FURTHER ORDERED that Neil LeBeau's motion to join (Docket 244) is granted. The motion for recusal brought by Gerald LeBeau and joined by Neil LeBeau (Docket 211) is denied.

Dated June 16, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

[4] Gerald also argues that a "[r]efusal to recuse in this case would rise to the level of a due process violation." Docket 212 at 6. Gerald provides no support for that argument. Because Gerald has not developed this argument beyond a conclusory statement, the court does not address it.

9