UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GERALD WAYNE LEBEAU and<br>NEIL THOMAS LEBEAU,<br><br>Defendants. | 5:14-CR-50048-KES<br><br><br>ORDER ADOPTING REPORT AND<br>RECOMMENDATION |

**NATURE AND PROCEDURE OF CASE**

Defendants, Gerald Wayne LeBeau and Neil Thomas LeBeau, are charged in a superseding indictment with conspiracy to distribute cocaine and conspiracy to distribute marihuana. Docket 56. Gerald is also charged with possession with intent to distribute cocaine and attempted witness tampering. *Id.* Gerald moves: to suppress evidence (Docket 30, Docket 142);[1] to suppress tape recordings of jail telephone calls (Docket 129); to suppress sealed

_____

[1] Initially, Gerald moved to suppress evidence based on a Fourth Amendment violation. Docket 30. An evidentiary hearing was held on October 29, 2014. Following the evidentiary hearing, another hearing was held ex parte and new counsel was appointed to represent Gerald. The evidentiary hearing was held open so Gerald's new counsel could present additional argument and evidence, if desired. Docket 80. Gerald's current counsel filed a new motion to suppress on Gerald's behalf accompanied by a request for a *Franks* hearing. Docket 142. Both motions raise the same issues. The report and recommendation address the motions together. No party objected to that joint consideration.

envelopes and for a *Franks* hearing (Docket 140); and to suppress evidence taken from tribal land (Docket 157). Neil LeBeau moves: to suppress recorded telephone conversations (Docket 154); to join Gerald's motion to suppress evidence taken from tribal land (Docket 160); to suppress evidence from a 2012 traffic stop (Docket 161); and to join Gerald's motion to suppress sealed envelopes and for a *Franks* hearing (Docket 163). Those motions were referred to a United States magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

During the evidentiary hearing, which spanned three days, the magistrate judge heard testimony from fifteen witnesses. Forty-two exhibits were received into evidence. Magistrate Judge Daneta Wollmann issued a report and recommended denial of all the pending motions. Docket 248. Gerald objects to the report and recommendation. Docket 273. Gerald also requests that this court remand to reopen the suppression hearing or to supplement the record. Docket 274. Neil has not objected to the report and recommendation and the time for filing objections has passed. For the following reasons, the report and recommendation is adopted as supplemented by this opinion.

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court should make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Accord United States*

2

*v. Benitez*, 244 F. App'x 64, 66 (8th Cir. 2007) ("If a party objects to the magistrate judge's report and recommendation with respect to a dispositive matter, the district court judge must conduct a *de novo* review of the disputed portion of the magistrate judge's report and recommendation."). A motion to suppress evidence is a dispositive motion that requires de novo review. Fed. R. Crim. P. 59(b)(1), (3). De novo review in the context of reviewing a magistrate judge's report and recommendation does not require a new evidentiary hearing and only means a district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980) (internal quotations and citations omitted). In conducting de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994). The court has conducted a de novo review.

## FACTS

On January 9, 2014, law enforcement arrested Lloyd Nickle on a warrant at Cadillac Jack's Casino in Deadwood, South Dakota. The following day, Special Agent Jeff YoungBlood executed a search warrant on a room registered to Nickle at Cadillac Jack's, Room 471. The casino's manager, Tim Atyeo, reported to Agent YoungBlood that a woman who had accompanied Nickle,

3

identified at the time by hotel staff as Jessica Fields, was still in the hotel and had been seen with Gerald LeBeau.

Agent YoungBlood contacted Agent Dan Cooper to see if Agent Cooper was familiar with Gerald. Agent Cooper was familiar with Gerald based on Gerald's previous conviction of drug charges. Gerald was currently the subject of an open and active FBI investigation at the time. Agent Cooper was also aware of reports that Gerald possessed guns and had threatened to have a shootout with police rather than go back to prison. Consequently, Agent Cooper decided to go to Cadillac Jack's to assist Agent YoungBlood with the developing situation. Upon arrival at Cadillac Jack's, Agent Cooper recognized Gerald's car in the parking lot. Because Agent Cooper knew Gerald would recognize him, he waited in the parking lot while Agent YoungBlood, along with Agent Lyle Tolsma and Agent Shawn Sheridan, entered Cadillac Jack's.

The agents reviewed five hours of hotel video surveillance footage to determine where the woman associated with Nickle could be found. Hotel staff identified a woman seen with Gerald as the woman tied to Nickle. Based on the surveillance footage, law enforcement believed that woman was in Gerald's hotel room, Room 452. Law enforcement went to the fourth floor with hotel staff and observed a woman with Gerald whom hotel staff again identified as the person associated with Nickle.

4

Based on the reported association of the woman in Room 452 with Nickle, law enforcement requested that Atyeo have the front desk call Gerald's room and ask him to step outside to speak with Atyeo. Gerald opened his door, and the law enforcement agents patted him down, handcuffed him, and began to speak to him about the female in his room. At the same time, Marlin LeBeau approached the room and was also handcuffed and detained.

Agent Tolsma used an audio recorder to document the conversation in the hallway. Because of the poor quality of the recording and other background noise, it is difficult to hear the exchange between law enforcement and Gerald in the hallway. After a few minutes, Gerald called out to the woman in the room and law enforcement knocked on the door. The woman answered the door, and Agents Tolsma and Sheridan stepped into the hotel room.

Upon entering Room 452, Agent Tolsma spoke with the woman, who identified herself as Tyra Smith. While that conversation was occurring, Agent Sheridan performed a brief protective sweep of the hotel room. During the sweep, Agent Sheridan noticed white powder in plain view. Shortly thereafter, Agent YoungBlood escorted Smith to Room 471 to attempt to ascertain her identity and determine whether she was the woman known to hotel staff as Jessica Fields.

After Agent YoungBlood and Smith left, Agents Tolsma and Sheridan brought Gerald and Marlin into Room 452. The agents moved Gerald's

5

handcuffs to his front so he could sit down. At that time, the agents obtained Gerald's consent to search Room 452. Gerald signed a permission to search form.[2] Although the audio recorder malfunctioned while Gerald was signing the form, Agent Tolsma replaced the recorder's battery and resumed the recording, at which time Gerald verbally confirmed his signature and his consent. Later, Gerald agreed that law enforcement could search his car located in the hotel parking lot. Law enforcement located a small amount of cocaine and syringes in Gerald's hotel room. Agent Cooper found four ounces of cocaine hidden in Gerald's car.

Upon discovery of the large amount of cocaine in Gerald's car, he was arrested and transported to the Pennington County Jail. Agent Sheridan advised Gerald of his Miranda rights and Gerald requested a lawyer. At that point, both agents stopped asking Gerald questions, although both agents indicated that Gerald continued to discuss his gambling extensively. Once Gerald arrived at the Pennington County Jail, he was booked and signed the standard booking form.

On January 16, 2014, Agent Cooper prepared an affidavit in support of an application for a search warrant for Gerald's trailer on the Pine Ridge Indian

---

[2] Gerald disputes the authenticity of his signature.

Reservation, Gerald's cell phone, and Gerald's 1992 Ford Thunderbird. Agent Cooper was unable to present the affidavit to a federal judge, so he presented the applications to South Dakota State Seventh Circuit Court Judge Robert Gusinsky. Judge Gusinsky issued the search warrants.

On January 17, 2014, law enforcement searched Margaret Clark's residence, which is located on the Pine Ridge Indian Reservation. Clark informed law enforcement that the house belonged to her and she had control over all of it. She consented to a search of her property, although she stated she did occasionally let relatives stay at her home and she did not know which items belonged to which person.

While in custody at the Pennington County Jail, Gerald placed numerous phone calls to different individuals. At the beginning of each call, an announcement warns both parties to the call that the call is being recorded. Gerald had conversations with another inmate regarding drug activity, and the inmate reported the discussions to his attorney and law enforcement. Gerald also wrote two letters and a note, which were eventually seized and searched by law enforcement.

Gerald moved to suppress his statements and the evidence from the hotel room and his car based on alleged Fourth Amendment violations, and for a *Franks* hearing. Docket 30; Docket 142. Gerald also moved to suppress the recorded telephone calls. Docket 129. Gerald moved to suppress the sealed

7

envelopes and for a *Franks* hearing, Docket 140, and to suppress evidence taken from tribal land based on a lack of jurisdiction, Docket 157. Neil moved to suppress the recorded phone calls, Docket 154, and to suppress evidence from a 2012 traffic stop, Docket 161. Neil also moved to join Gerald's motion regarding the envelopes and Gerald's motion regarding evidence seized on tribal land. Docket 160 (joinder in tribal land motion); Docket 163 (joinder in envelopes motion).

The magistrate judge found that the initial knock and talk complied with the requirements of the Fourth Amendment. Docket 248 at 11-12. Because the government indicated it did not intend to introduce any pre-arrest statements by Gerald at trial, the magistrate judge recommended Gerald's motion to suppress pre-arrest statements be denied as moot. *Id.* at 12. The magistrate judge also concluded that Gerald consented to the search of his room and his vehicle. *Id.* at 13-16. In doing so, the magistrate judge rejected the testimony of Gerald's handwriting expert, who claimed Gerald's signature was forged. *Id.* at 16-18. The magistrate judge also determined that Gerald's consent was voluntary, knowing, and intelligent. *Id.* at 18-19. Thus, the magistrate judge concluded that even if Gerald did not consent to the initial entry into the hotel room, Gerald's subsequent consent to search allowed law enforcement to search his hotel room and car. The magistrate judge recommended that Gerald's motion to suppress evidence obtained from his car and hotel room be

8

denied. *Id.* at 19-22. The magistrate judge recommended that Gerald's motion to suppress post-arrest statements be denied because any statements made were voluntary. *Id.* at 22-23.

With respect to the January 16, 2014, search warrants, the magistrate judge found no basis for a *Franks* hearing. *Id.* at 23-28. She determined that the warrants were supported by probable cause and Judge Gusinsky had the authority to issue the warrants. *Id.* at 28-30, 38-39. The magistrate judge recommended that the motions to suppress jail telephone calls by both Gerald and Neil be denied because they were recorded in the ordinary course of business and Gerald and Neil had notice the calls were being recorded. *Id.* at 30-31. The magistrate judge concluded that the documents obtained from Scott Burleson, Pablo LeBeau, and Luke Pond were not obtained in violation of the Fourth Amendment. *Id.* at 32-34. With respect to the sealed letters, the magistrate judge found no basis for a *Franks* hearing and concluded that the search warrant was supported by probable cause. *Id.* at 34-37. The magistrate judge also recommended that Neil's motion to join be denied because he could show no reasonable expectation of privacy in any of those materials. *Id.* at 31-32.

With respect to the evidence taken from tribal land, the magistrate judge concluded that the state court judge had authority to issue the search warrants and recommended that Gerald's jurisdictional argument be rejected.

*Id.* at 38-39. The magistrate judge found that Gerald did not demonstrate a reasonable expectation of privacy in Margaret Clark's residence. *Id.* at 39-41. Again, the magistrate judge recommended that Neil's motion to join be denied because Neil did not show that he had a reasonable expectation of privacy in any of the places searched. *Id.* at 37-38. Finally, the magistrate judge recommended that Neil's motion to suppress evidence obtained during a 2012 traffic stop be denied as moot because the government indicated it did not intend to offer such evidence. *Id.* at 41.

## DISCUSSION

### I.   Jurisdiction

Gerald objects to the report and recommendation's jurisdictional statement. Gerald's argument, in its entirety, states that "[Gerald] is a Native American and this Court does not have jurisdiction over his person." Docket 273 at 2. Objections to a magistrate judge's report and recommendation must be specific enough to allow a district court to understand the nature of the objection and to rule on it. Gerald's single unsupported sentence does not point the court to any reason why this court would not have jurisdiction over Gerald. Nonetheless, having considered the jurisdictional issue de novo, the court finds it does have jurisdiction over this matter and over Gerald personally. *See United States v. Drapeau*, 414 F.3d 869, 877-78 (8th Cir. 2005) (stating that federal drug laws apply on reservations and to tribal members); *LeBeaux v.*

10

*United States*, 165 F. App'x 496, 498 (8th Cir. 2006) (unpublished decision)[3] (rejecting a similar argument by Gerald, in an action related to his first federal drug conviction, that the Fort Laramie Treaty deprived the district court of jurisdiction over a drug conspiracy charge against Gerald). The objection is overruled.

## II.    Factual Background

Gerald objects that the report and recommendation "makes numerous factual findings based on testimony unsupported by physical evidence." Docket 273 at 2. Gerald provides no authority requiring physical evidence to support factual findings. Testimony, particularly credible, consistent, and corroborated testimony, is sufficient to support the report and recommendation's factual background statements.

Gerald's objection also identifies examples of factual conclusions in the report and recommendation that he believes are either unsupported or false. *Id.* at 2-3. Gerald argues that the evidence does not show he ever possessed a gun. The report and recommendation did not state that Gerald in fact possessed a gun. Rather, it accurately recounted Agent Cooper's testimony that

_____

[3] Although Eighth Circuit Rule 32.1A indicates that unpublished decisions issued prior to January 1, 2007, should generally not be cited, this unpublished opinion is available through a commercial electronic database and has particular relevance to this case.

11

law enforcement had received reports that Gerald had access to guns and had threatened violence if confronted by law enforcement. That testimony was offered to support Agent Cooper's belief that he should assist Agent YoungBlood in a potentially dangerous situation. Physical evidence is not required to support Agent Cooper's conclusion.

Gerald contends that the report and recommendation's description of the identity of the female in his hotel room is inaccurate. He argues that Tyra Smith was never in the company of Nickle and no witnesses tied her to Nickle. That argument is unsupported by the evidence. Although the issue of Smith's actual identity and the identity of the woman known as Jessica Fields is confused, multiple witnesses testified that hotel staff identified the woman with Gerald (Smith) as the same woman seen with Nickle (Fields). The report and recommendation correctly attributed those statements to hotel staff.

Gerald argues that the report and recommendation's statement that officers reviewed surveillance video of the female with Gerald is false. The basis of Gerald's objection is "[n]o such video exists." Multiple witnesses testified that they viewed surveillance footage. The fact that the footage was not subsequently taken into evidence does not mean officers did not view it at the time. The report and recommendation accurately represents the credible testimony of the witnesses.

Gerald asserts that the report and recommendation's statement that Gerald allowed law enforcement to enter his room is inaccurate because there is no written consent and the audio does not prove consent. The report and recommendation relies on the testimony of the agents and notes the limitations of the audio recording. The report and recommendation's statement is supported by the testimony of multiple witnesses and is not undermined by the lack of a written consent to the initial entry.

Gerald argues that the report and recommendation inaccurately states that Agent Tolsma entered the hotel room. Gerald bases his argument on the fact that Agent Tolsma moved the latch on the door without Gerald's consent, thereby keeping the door open and allowing Agent Tolsma to enter later. Gerald's argument is unsupported by the testimony at the hearing. Agent Tolsma testified that he did not move the latch after Gerald initially came out of the room, but the door stayed ajar on its own. Docket 193 at 75 (Tr. 283). Agent Tolsma explained that he did not move the latch to keep the door open until they were searching the room to allow other agents to enter without getting a key from the manager. *Id.*

Gerald argues that the report and recommendation improperly stated that Gerald's prior attorney admitted that Gerald gave law enforcement permission to enter his hotel room to remove the female. Gerald believes that statement is improper because Gerald's previous attorney never testified at the

13

suppression hearing. The statement referenced in the report and recommendation is found at Docket 31 at 1 ("Defendant [Gerald] LeBeau granted permission only to remove the female from his hotel room."). The report and recommendation relied on the testimony of law enforcement that Gerald gave them permission to enter the room to speak with the female in the room. The magistrate judge did not rely on the argument by Gerald's former attorney, but noted that argument as consistent with the testimony presented at the hearing by law enforcement.

Gerald argues that the report and recommendation inaccurately stated that he signed the consent form. Although the factual background section of the report and recommendation did not discuss the testimony of the handwriting expert, the report and recommendation later analyzed the competing testimony on the authenticity of Gerald's signature in detail. The report and recommendation explained and supported its decision to reject Gerald's expert testimony. Gerald also asserts that he could not have signed the consent form because his hands were handcuffed behind his back. But that argument fails to account for the fact that law enforcement moved Gerald's handcuffs to the front when they brought him from the hallway into Room 452—*before* he signed the consent form. *See, e.g.*, Docket 193 at 106 (Tr. 314). Thus, it was not error for the report and recommendation to state that Gerald signed the consent form.

14

Gerald argues that the report and recommendation incorrectly stated that Gerald did not show signs of intoxication. Despite Gerald's assertion to the contrary, multiple witnesses testified that Gerald did not appear intoxicated. The report and recommendation accurately summarized the testimony presented at the evidentiary hearing.

Gerald argues that the report and recommendation incorrectly stated that Magistrate Judge Duffy was not available. Again, the report and recommendation accurately recounted the uncontroverted testimony given at the hearing.

Gerald contends that the report and recommendation stated Gerald placed phone calls from jail but no expert identified the voice on the tapes as Gerald and the tapes otherwise lack foundation. Agent Cooper testified that he recognized Gerald's voice on the tapes and that he is familiar with Gerald's voice and the people Gerald was discussing on the tapes. *See* Docket 195 at 127 (Tr. 127). Gerald provides no reason why the government must provide expert testimony to identify Gerald's voice, or why Agent Cooper's testimony is insufficient to establish foundation for the tapes.

Finally, Gerald argues that the report and recommendation states that law enforcement seized two sealed letters, but that the search warrant application demonstrates the letters were unsealed prior to the obtaining the search warrant. The page pointed to by Gerald, Bates stamped 574, shows a

15

fax date of July 16, 2014. *See* Ex. K. But that page was not one of the sealed letters. Instead, it was one of the letters given to Scott Burleson and turned over to the government by him. The sealed letters, Bates stamped 580-592 in Exhibit K, bear no fax information. *See also* Docket 195 at 203 (Tr. 203) (cross-examination of Agent Cooper regarding the sealed envelopes). Thus, the fax date on the page referenced by Gerald does not show that the sealed letters were in fact unsealed before the search warrant was issued.

After reviewing the transcript of the evidentiary hearing and the exhibits introduced at that hearing and considering Gerald's objection and examples de novo, the court believes the report and recommendation properly relied on credible testimony presented at the hearing and that the factual background section correctly summarizes the evidence presented at the hearing. Gerald's objection is overruled.

### III.   Motion to Suppress

#### A.   Introduction

Gerald objects that "[l]aw enforcement did not have probable cause to conduct a search of [Gerald's] hotel room in Deadwood. As soon as [Gerald] opened the door, law enforcement pulled him out of the room, handcuffed him and without his consent latched the hotel room door so it would not close." Docket 273 at 3. The corresponding section of the report and recommendation

16

found that law enforcement properly engaged in a knock and talk and did not violate the Fourth Amendment. Docket 248 at 11-12.

Law enforcement officers do not engage in a search when they knock on a suspect's door and initiate a conversation in an attempt to obtain evidence. *See Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011). Thus, law enforcement is not required to demonstrate probable cause for a knock and talk. The court agrees with the report and recommendation's conclusion that law enforcement complied with the knock and talk procedures in this case.

Additionally, Gerald's description of the facts is not consistent with the testimony given at the evidentiary hearing. Agent Tolsma testified that Gerald voluntarily came out of his hotel room and that law enforcement did not pull him out. Docket 193 at 46 ("We asked him to step out of the room. To speak with us. He came out of the room."); *id.* at 85 ("We asked him to come out and he willingly came out to visit with us."). Although Gerald was handcuffed, officers may handcuff a suspect to protect their safety. *Smith*, 645 F.3d 998, 1002-1003 (8th Cir. 2011) (stating that officers may handcuff an agitated suspect during a *Terry* stop); *United States v. Comstock*, 531 F.3d 667, 677 (8th Cir. 2008) (internal quotation marks omitted) ("[B]eing handcuffed does not preclude a finding of voluntariness."). Agent Tolsma also testified that he did not latch the door open. *Id.* at 75. Gerald introduced no contradictory evidence.

17

Thus, the report and recommendation's factual conclusions are supported by the evidence. Gerald's objection is overruled.

### B.    Pre-Arrest Statements

The magistrate judge recommended that Gerald's motion to suppress his pre-arrest statements be denied as moot because the government indicated it did not intend to introduce any such statements at trial. Gerald states that he renews that motion, but does not provide any argument, evidence, or authority as to why the magistrate judge's conclusion should not be adopted by this court. When the government indicates it will not introduce evidence challenged in a motion to suppress, there is no evidence to be suppressed and the motion should be denied as moot. *See United States v. Brown*, 584 F.2d 252, 255 (8th Cir. 1978) (internal quotations omitted) ("As evidence was not introduced as a result of these searches, there is nothing upon which the exclusionary rule can operate."). Gerald's objection is overruled.

### C.    Search of the Hotel Room

**1.    Consent**    Gerald objects to the report and recommendation's conclusion that he consented to the search of his hotel room. Specifically, Gerald argues that the government agreed not to use his pre-arrest statements against him so the government cannot use those statements to show consent. Docket 273 at 4. Gerald also argues that there is no testimonial evidence from a prior attorney whom Gerald consented. *Id.*

18

Gerald also reiterates his contention that he was forcibly removed from his room and that law enforcement latched the door open. *Id.*

Gerald's assertion that the government cannot show consent because it agreed not to introduce his pre-arrest statements confuses the introduction of statements *at trial* with the introduction of statements *at the suppression hearing.* The fact that the government will not use Gerald's statements at trial does not preclude the government from using those statements to show that Gerald consented to a search, particularly when Gerald himself put his consent in question by arguing for suppression. Gerald's argument regarding the statement by his prior attorney is unpersuasive and the report and recommendation's conclusion is supported by uncontroverted testimonial evidence from several credible sources. Finally, for the reasons the court previously stated, Gerald's description of being yanked from his room and his contention that law enforcement latched the door open are unsupported by the evidence. Gerald's objection is overruled.

### 2. Forgery

Gerald objects to the report and recommendation's decision to reject the opinion of Wendy Carlson, a handwriting expert retained by Gerald who opined that Gerald's signature on the consent form was forged. Gerald's objection reads:

> Ms. Wendy Carlson, a handwriting expert, examined the consent to search form which the government claims [Gerald] signed. The Court states no proof and it is only purported when it is the same signature and document the government provided. [sic] Likewise then, the government's attempt to claim [Gerald] signed it is unproven. Moreover, the government's FBI expert did not seek over 30 signatures for comparison and rarely is capable of giving an opinion of a known signature. The signature was forged.

Docket 273 at 4.

Carlson testified that she is certain the signature on the consent form is not Gerald's signature, and that it is highly probable that Agent Tolsma actually signed Gerald's purported signature. Docket 195 at 32-33. The government called Daniel Anderson, a handwriting expert for the FBI, who called into question Carlson's methodology and conclusions. The government also impeached Carlson's qualifications. Also, the government pointed out that Gerald was handcuffed at the time he signed the consent form. Importantly, the government introduced credible and consistent testimony from Agents Tolsma and Sheridan that Gerald did sign the consent form. That testimony is confirmed by Gerald's verbal acknowledgement of the signature on the audio recording, along with his statement that he had nothing to hide. *See* Ex. 10 (beginning of track 2).[4]

---

[4] The recording appears to be divided into two tracks, the first covering the time from law enforcement's initial contact with Gerald to the recorder's

The report and recommendation thoroughly discussed its reasons for discounting Carlson's opinion, and after a de novo review, this court agrees with the magistrate judge's conclusion to reject Carlson's opinion. The court finds the testimony of Agents Tolsma and Sheridan to be credible and consistent, and their testimony is corroborated by the audio recording. Gerald's objection is overruled.

### 3.    Impairment

Gerald objects to the report and recommendation's finding that he was not impaired. In support of that position, Gerald argues that his "alcohol content at the time of the search of his hotel room was .116, well above South Dakota's per se driver impairment of .08. [Gerald's] judgment was impaired and he did not know what he was doing." Docket 273 at 4-5. Gerald's expert, Kathryn Engle, opined that Gerald's blood alcohol content was likely between .076 and .116 at the time of his interaction with law enforcement. Docket 195 at 104 (Tr. 104). Gerald provides no authority that the voluntariness of consent is tied to whether a person could legally operate a motor vehicle. Each agent who interacted with Gerald testified that he did not seem intoxicated. Also, the

---

malfunction, and the second beginning when the recorder was repaired.

21

tape recording demonstrates that Gerald was coherent throughout the encounter with law enforcement. Gerald's objection is overruled.

### 4.   Initial Entry

Gerald objects to the report and recommendation's conclusion that any initial Fourth Amendment violation was cured by his subsequent consent. Docket 273 at 5. In support of his objection, Gerald argues that the government agreed not to use his pre-arrest statements against him, that he was thrown up against the wall,[5] and that he did not subsequently consent to a search of his room. The court has already rejected those three arguments. The court agrees with the report and recommendation's conclusion that, even assuming there was an initial Fourth Amendment violation, Gerald's subsequent consent cured any violation. Gerald's objection is overruled.

### D.   Search of the 1992 Ford Thunderbird

Gerald objects to the report and recommendation's determination that he consented to the search of his vehicle, stating "[t]he Court finds consent based upon statements the government conceded it would not use. Also, there is no

---

[5] The cordial and conversational demeanor of the audio recording contradicts Gerald's assertion that law enforcement engaged in flagrant conduct in this case. Gerald provides no basis for his implied assertion that the report and recommendation incorrectly applied the factors found in *United States v. Whisenton*, 765 F.3d 938, 941 (8th Cir. 2014).

written consent. There was no consent to search the vehicle." *Id.* The court has already rejected Gerald's argument regarding his pre-arrest statements. Also, although there is no separate written consent form for Gerald's vehicle, both Agent Tolsma and Agent Sheridan testified that Gerald consented to the search of his vehicle. Gerald can clearly be heard on the audio recording consenting to a search of his vehicle. Ex. 10 (40 minutes into track 2). Gerald also subsequently confirmed in a recorded phone call that he consented to the search of his car. *See* Ex. 6 (phone call); Ex. 7 (transcript of phone call). The evidence establishes that Gerald consented to the search of his vehicle. Gerald's objection is overruled.

### E.    Post-Arrest Statements

Gerald objects to the magistrate judge's recommendation that his motion to suppress post-arrest statements be denied. Gerald argues that law enforcement continued to question him after he asked for a lawyer and invoked his right to remain silent. It is unclear if the government intends to introduce any post-arrest statements made by Gerald. Even so, Agent Tolsma and Agent Sheridan testified that they did not question Gerald after his arrest and that Gerald volunteered information concerning his gambling habits and strategies. That testimony is circumstantially corroborated by Gerald's extensive and uninhibited discussion of gambling captured throughout the audio recording. *See generally* Ex. 10. Because law enforcement did not question Gerald after

his arrest, any comments Gerald made were voluntary, were not the product of interrogation, and did not elicit incriminating responses. *See Rhode Island v. Innis*, 446 U.S. 291, 297-302 (1980). Gerald's objection is overruled.

### F.   January 16, 2014, Search Warrant

#### 1.   Preliminary Showing for *Franks* Hearing

Gerald objects to the report and recommendation, arguing that he met his burden under *Franks v. Delaware*, 438 U.S. 154 (1978), and is entitled to a hearing on whether law enforcement knowingly, intentionally, or with reckless disregard for the truth, made false statements or omitted material facts in a search warrant affidavit, which statements or omissions were necessary to a finding of probable cause. Docket 273 at 5-7. Gerald presents a list of 24 bullet points that he believes represents information that should have been included in the search warrant application. *Id.*

The facts Gerald argues should have been disclosed to the issuing judge are not actually facts but are Gerald's one-sided legal arguments and conclusory statements. Moreover, the report and recommendation and this court rejected Gerald's arguments regarding his consent to search Room 452 and his vehicle. Many of Gerald's other bullet points relate to the identity of Jessica Fields. The testimony at the evidentiary hearing does not support Gerald's claim that Jessica Fields was a ruse invented by law enforcement to get to Gerald. Rather, Agents Cooper, Tolsma, Sheridan, and YoungBlood all

24

testified that at the time of their encounter with Gerald, they were relying on information provided by hotel staff that the woman with Gerald was the same woman who had been with Nickle. That testimony is consistent with the testimony of Atyeo. The fact that law enforcement relied on tips from hotel staff—even if those tips turned out to be incorrect—does not constitute a knowing, intentional, or reckless falsehood. Gerald failed to carry his burden to make a substantial showing that an affiant in support of a search warrant application knowingly, intentionally, or recklessly made a false statement or omitted a material fact. *See Franks*, 438 U.S. at 171 (stating that a defendant's challenge must be more than conclusory and must be supported by the evidence). Gerald's objection is overruled.

### 2.    Validity of the Search Warrant

Gerald objects to the report and recommendation's conclusion that the search warrants were valid. Gerald reasserts the same arguments he advanced in objecting to the report and recommendation's conclusion on the *Franks* hearing. *See* Docket 273 at 7. For the reasons previously stated, those arguments are not persuasive.

" '[T]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quoting *United States v. Solomon*, 432 F.3d 824, 827

25

(8th Cir. 2005)). Probable cause is assessed " 'from the viewpoint of a reasonably prudent police officer acting in the circumstance of the particular case.' " *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Reinholz*, 245 F.3d 765, 766 (8th Cir. 2001)). A probable cause determination is based on a "common-sense reading of the entire affidavit." *Id.*

" 'When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.' " *Solomon*, 432 F.3d at 827 (internal quotations omitted) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted).

Agent Cooper's affidavit included information from at least ten sources of information and recorded phone calls Gerald made from jail. The information is all mutually corroborative. "[T]he receipt of consistent information from two separate sources is a form of corroboration." *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013). Law enforcement also corroborated some of the details. *See* Ex. N at 7 (corroborating details relating to a white trailer near a Pizza Hut restaurant). Verification of small or innocent details can provide sufficient corroboration to establish probable cause. *Rodriguez*, 711 F.3d at

26

936. The affidavit also included information on the large quantity of drugs discovered in Gerald's vehicle and hotel room only a few days prior to the search warrant application. The affidavit tied Gerald's suspected drug distribution activity to his vehicle and his residence, and it established that he conducted drug transactions at least sometimes using a phone. This information established probable cause to issue the search warrants. Gerald's objection is overruled.

### 3.   Jurisdiction of Circuit Court Judge Robert Gusinsky

Gerald's objection, in its entirety, states "Judge Gusinsky did not have authority to issue the search warrants." Docket 273 at 7. Gerald provides no new arguments or authority supporting his assertion. The Eighth Circuit rejected a similar argument in *United States v. Chipps*, 410 F.3d 438 (8th Cir. 2005). In *Chipps*, a state court judge issued a search warrant for the defendant's home that was on the Pine Ridge Indian Reservation and outside the state court judge's territorial jurisdiction. The Eighth Circuit determined that, under Federal Rule of Criminal Procedure 41(b)(1), the state court judge could issue the warrant when the federal magistrate judge was unavailable. *Id.* at 446. In doing so, the Eighth Circuit stated that the defendant's "assertion that there was no showing of unavailability does not suffice[.]" *Id.* at 447. As in *Chipps*, the state court judge here was able to issue the warrants as a proxy for the unavailable federal magistrate judge under Rule 41(b)(1), and Gerald's bare

27

assertion that the government did not prove unavailability is inadequate to invalidate the warrant. Gerald's objection is overruled.

## IV.    Motion to Suppress Recorded Jail Telephone Calls

Gerald objects to the report and recommendation's conclusion that the taped telephone calls Gerald made from the Pennington County Jail should not be suppressed. Gerald argues primarily that he did not consent to the recordings and that he had insufficient notice of the recordings.[6] Docket 273 at 7-8.

The record contradicts both of Gerald's factual assertions. Agent Cooper testified that a recording plays at the beginning of every call placed by an inmate that advises the inmate and the recipient of the call that the call is being recorded. Docket 195 at 126 (Tr. 126). Agent Cooper's testimony is confirmed by the calls introduced at the evidentiary hearing. *See* Ex. 6 (call including introductory message); Ex. 7 (transcript of Ex. 6); Ex. 8 (call with introductory message cut off by early acceptance of call); Ex. 9 (transcript of Ex. 8). Thus, Gerald both had notice of the fact that his calls were recorded and consented to the recording. The recordings do not violate Gerald's Fourth

---

[6] Gerald implies there is inadequate foundation for the recordings because there is no proof the calls were made by him. Agent Cooper testified that he recognized Gerald's voice. Docket 195 at 127 (Tr. 127).

Amendment rights. *See United States v. Morin*, 437 F.3d 777, 780 (8th Cir. 2006); *United States v. Eggleston*, 165 F.3d 624, 626 (8th Cir. 1999); *United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992).

Gerald also argues that the recording violated his rights under the First, Fifth, and Fourteenth Amendments. Gerald has provided no authority, either to the magistrate judge or this court, supporting his position. The government did not prevent Gerald from engaging in protected speech. Nor has the government created a mechanism to collect discovery without providing reciprocal discovery or to improperly generate evidence. The government did not compel Gerald to make the phone calls in question or to make the incriminating comments found on the recordings. The recording of prison phone calls is a standard procedure to which Gerald consented and which did not deprive him of any recognized constitutional rights. *See Horr*, 963 F.3d at 1126 ("Horr was aware of the telephone monitoring policy. It was his choice to use the telephone to conduct his illegal business. Having gambled by discussing his escape on the prison telephone, Horr cannot now be heard to complain that he lost."). Gerald's objection is overruled.[7]

_____

[7] Neil has not objected to the report and recommendation's conclusion that his motion to suppress the recorded phone calls should be denied. The court adopts that conclusion for the same reasons given with respect to

## V.    Motion to Suppress Sealed Envelopes and for *Franks* Hearing

### A.    Neil's Motion for Joinder

Gerald asserts that "[t]he government cannot prove any consent or legal authority to read Neil's letter. It must be suppressed." Docket 273 at 10. Neil has not objected to the report and recommendation. Nonetheless, the court has conducted a de novo review and adopts the report and recommendation's conclusion that Neil does not have standing to challenge the introduction of the letters. Gerald's objection is overruled.

### B.    Documents Provided by Scott Burleson and Pablo LeBeau

Gerald's objection states that "[t]here is no proof these documents were legally obtained from [Gerald]. They must be suppressed." Docket 273 at 10. It is unclear to which documents Gerald refers, but he attached to his brief in support of the motion to suppress (1) a letter given to the government by Scott Burleson, and (2) a letter given to the government by Pablo LeBeau's attorney. *See* Docket 141 at 1-2 (listing those two items in addition to the sealed envelopes and note to Luke Pond).

Agent Cooper testified that Burleson turned over a letter written by Gerald that Gerald wanted Burleson to mail for him in an effort to circumvent

Gerald's motion.

the jail's mail policy and conceal his communication. Docket 195 at 151 (Tr. 151). That testimony links Gerald to the first letter. Agent Cooper also testified that Burleson did not steal the letter from Gerald, but that Gerald voluntarily gave the letter to Burleson[8]. *Id.* at 200 (Tr. 200). As to the letter turned over to the government by Pablo's attorney, Agent Cooper testified that Pablo represented that the letter was sent to him by Gerald. *Id.* at 158 (Tr. 158). Thus, Gerald's argument that no evidence ties him to the letters or that the letters were somehow illegally obtained from him is without merit. Gerald's objection is overruled.

### C.   Note between Gerald and Luke Pond

Gerald states that "[t]he note is mail and may not be personally interfered with by the government absent consent or a warrant, neither of which was proven. The note/mail must be suppressed." Docket 273 at 10. Gerald fails to rebut the report and recommendation's position that any expectation of privacy Gerald had in the note terminated upon delivery of the note to Pond. Furthermore, like the letters from Burleson and Pablo, Agent

---

[8]  The report and recommendation states, "No is no evidence that law enforcement did not directed Scott Burleson or Pablo LaBeau to steal anything from Gers LeBeau." Docket 248 at 33. This appears to be a typographical error. From context, it is clear that the magistrate judge intended to state that there is no evidence that law enforcement directed Scott Burleson or Pablo LeBeau to steal anything from Gerald.

Cooper testified that Pond gave the note to the government for inspection. Docket 195 at 161 (Tr. 161). Gerald has failed to establish a Fourth Amendment violation. Gerald's objection is overruled.

### D.    Sealed Envelopes Obtained Through Search Warrant

Gerald objects to the report and recommendation's conclusion that he is not entitled to a *Franks* hearing because he did not make a substantial showing that Agent Miller knowingly, intentionally, or recklessly included false statements in his affidavit in support of his search warrant application for the sealed letters. Gerald's argument merely reproduces the bullet points he presented in connection with the January 16, 2014, search warrant. *See* Docket 273 at 12-13. For the reasons stated above, the court does not accept Gerald's characterization as sufficient to show a *Franks* violation. In fact, Agent Miller's affidavit has nothing to do with the January 10, 2014, search of Gerald's vehicle and hotel room. *See* Ex. K (Miller affidavit). Thus, the failure of Agent Miller to include facts unrelated to the events in his search warrant is not a *Franks* violation.

Gerald also argues that the search warrant for the sealed letters is unsupported by probable cause. Docket 273 at 10-12. The affidavit includes information that Gerald was suspected of continuing his drug operation from jail via phone calls and outgoing letters. Ex. K at 2-3. The affidavit also references, and includes as attachments, prior written communications by

Gerald relating to his drug operation. *See* attachments to Ex. K. The affidavit presents ample facts to demonstrate there was a fair probability that evidence of a crime would be found in the sealed letters. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Gerald's objection is overruled.

## VI.   Motion to Suppress Evidence Taken from Tribal Land for Lack of Jurisdiction

### A.   Neil's Motion to Join

Gerald argues that "[a]s [a] member of the Oglala Sioux Tribe, Neil has standing to challenge any unauthorized intrusion into his sovereign country." Docket 273 at 13. Neil has not objected to the report and recommendation. Nonetheless, the court has conducted a de novo review and adopts the report and recommendation's conclusion that Neil does not have standing to challenge the searches on tribal land.

### B.   Jurisdiction

Gerald objects to the report and recommendation's conclusion that Judge Gusinsky was empowered to issue the search warrants for items on tribal land. Docket 273. Gerald provides no new arguments or authorities on this question. As discussed above, the report and recommendation correctly concluded that Judge Gusinsky had the power to issue the warrants based on the unavailability of a federal magistrate judge. *See Chipps*, 410 F.3d at 446. Gerald's objection is overruled.

33

### C.    Margaret Clark Residence and Electric Pole

Gerald objects to the report and recommendation's conclusion that he does not have standing to challenge the search of Margaret Clark's residence. Docket 273 at 14. Gerald's objection states "[a]s a member of the Oglala Sioux Tribe, [Gerald] has standing to challenge any unauthorized intrusion into his sovereign country." *Id.*

"Fourth Amendment rights are personal and cannot be asserted vicariously." *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000). Margaret Clark testified that she consented to the search of her residence and that although other people stayed at her residence from time to time, only she and her sister Twila had a key to the house. Docket 193 at 275-76 (Tr. 483-84). Thus, Gerald does not have standing to challenge the search of Clark's residence. Gerald's unsupported assertion regarding unauthorized intrusion on sovereign territory does not alter that outcome. Gerald's objection is overruled.[9]

---

[9] The report and recommendation does not address the photos taken from a light pole near the Susan Schrader residence. Because Gerald does not provide any specific objection to that omission, the court does not review that issue.

34

### VII.   Motion to Reopen Suppression Hearing

In conjunction with his objections to the report and recommendation, Gerald moves this court to remand the motion to suppress to reopen the evidentiary hearing. Docket 274. Gerald bases his motion on alleged surprise and newly discovered evidence regarding photos purportedly showing Gerald's vehicle and his trailer in Pine Ridge on January 9, 2014, that he was unable to present at the evidentiary hearing due to a lack of notice.

A district court may, in its discretion, reopen a suppression hearing to hear newly discovered evidence. *See United States v. Johnson*, 944 F.2d 396, 403 n.5 (8th Cir. 1991) (holding that the district court did not abuse its discretion when it reopened the suppression hearing "to allow consideration of evidence not presented at the initial hearing"). In making the decision to reopen an evidentiary hearing, a district court may consider the probative value of the proffered new evidence and may deny the motion when the evidence is of little or no value in ruling on the motion to suppress. *See United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008).

Here, the evidentiary hearing was three days long. Gerald had ample opportunity to present evidence. Also, Gerald's counsel questioned the accuracy of the photos of the trailer and vehicle at the outset of the evidentiary hearing. *See* Docket 195 at 6-7 (Tr. 6-7) (arguing that Lona Lee Colhoff's testimony was relevant to the question of whether the photos of Gerald's

35

vehicle and trailer taken January 9, 2014, are authentic). Gerald also questioned Marie Zephier on whether Gerald's vehicle and trailer could have been photographed together on January 9, 2014. *See* Docket 193 at 316-18 (Tr. 524-26). Thus, Gerald's assertion that he was surprised at "the 11th hour" by the photographs of the vehicle and trailer is disingenuous at best. Furthermore, Gerald does not identify what new evidence he would present if the hearing were reopened. The court is unable to assess what, if any, probative value the new evidence would have. Gerald's motion to reopen the suppression hearing is denied.

## CONCLUSION

For the reasons stated in this opinion, Gerald's objections to the report and recommendation are overruled, and the court adopts the report and recommendation as supplemented by this opinion. Gerald cannot show a justification for reopening the suppression hearing. Accordingly, it is

ORDERED that Gerald LeBeau's first motion to suppress (Docket 30) is denied as moot with respect to Gerald's pre-arrest statements, and the remainder of the motion is denied.

IT IS FURTHER ORDERED that Gerald LeBeau's motion to suppress tape recordings of jail telephone calls (Docket 129) is denied.

IT IS FURTHER ORDERED that Gerald LeBeau's motion to suppress sealed envelopes and for a *Franks* hearing (Docket 140) is denied.

36

IT IS FURTHER ORDERED that Gerald LeBeau's second motion to suppress and for a *Franks* hearing (Docket 142) is denied as moot with respect to Gerald's pre-arrest statements, and the remainder of the motion is denied.

IT IS FURTHER ORDERED that Neil LeBeau's motion to suppress recorded phone calls (Docket 154) is denied.

IT IS FURTHER ORDERED that Gerald LeBeau's motion to suppress evidence taken from tribal land (Docket 157) is denied.

IT IS FURTHER ORDERED that Neil LeBeau's motion for joinder (Docket 160) is denied.

IT IS FURTHER ORDERED that Neil LeBeau's motion to suppress 2012 traffic stop evidence (Docket 161) is denied as moot.

IT IS FURTHER ORDERED that Neil LeBeau's motion for joinder (docket 163) is denied.

IT IS FURTHER ORDERED that Gerald LeBeau's motion to reopen the suppression hearing (Docket 274) is denied.

Dated July 2, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

37